421 P.2d 909

**GRAVER TANK & MAUFACTURING COMPANY, a corporation, Liberty Mutual Insurance Company, a corporation, and Underwriters at Lloyd's London, an unincorporated association, Appellants,**

**v.**

**The FLUOR CORPORATION, LTD., a corporation, Appellee.***

**No. 2 CA–CIV 240.**

Court of Appeals of Arizona.

Dec. 30, 1966.

Rehearing Denied Jan. 27, 1967.

Review Denied Feb. 28, 1967.

---

* This appeal was filed with the Arizona Supreme Court and assigned that court's No. 8255. The matter was referred to this court pursuant to A.R.S. Section 12–120.23.

May, Dees & Newell, by Robert A. May, Tucson, for appellants.

Lesher, Scruggs, Rucker, Kimble & Lindamood, by Robert O. Lesher, Tucson, for appellee.

HATHAWAY, Judge.

Graver Tank and Manufacturing Company, appellant-defendant, has appealed from a declaratory judgment entered in favor of Fluor Corporation, appellee-plaintiff. Fluor had a contract with the United States of America for the construction of certain phases of Titon II missile sites near Tucson. In 1961 Graver contracted to perform certain work as a subcontractor for Fluor under its government contract. A Graver employee named Donald Sykes was killed in performance of the subcontract. His administrator instituted an action against Fluor for Sykes' death alleging negligence, breach of contract and warranty. See Fluor Corporation v. Sykes, 3 Ariz.App. 211, 413 P.2d 270 (1966); Supplemental opinion Fluor Corporation, Ltd. v. Sykes, 3 Ariz.App. 559, 416 P.2d 610 (1966).

Fluor brought an action against Graver to obtain a declaratory judgment determining whether Fluor was protected under the indemnification clause of the contract between the parties. The pertinent provisions of the contract are as follows:

"10. CONTRACTOR does hereby indemnify and save harmless FLUOR and OWNER, or either from all claims, demands, causes of action or suits of whatever nature arising out of the services, labor, equipment and materials furnished by CONTRACTOR. * * *

"11. CONTRACTOR assumes entire responsibility and liability for all losses, expenses, damages, demands and claims in connection with or arising out of any injury, or alleged injury, (including death) or damage, or alleged damage, to persons or property sustained or alleged to have been sustained in connection with or to have arisen out of the performance of the WORK by CONTRACTOR * * * including losses, expenses or damages sustained by FLUOR or OWNER, and herein indemnifies and holds harmless FLUOR or OWNER, * * * from any and all such losses, expenses, damages, demands and claims, and agrees to defend any suit or action brought against them, * * * based on any such alleged injury or damage, and to pay all damages, costs and expenses, including attorney's fees, in connection therewith or resulting therefrom.

We must determine the following:

1. Is a contract which indemnifies against losses arising out of an indemnitee's own negligence against public policy, and therefore void?

2. If such a contract is not against public policy, then must it expressly refer to negligence?

3. Are the indemnity provisions ambiguous, so that parol evidence was correctly admitted?

### PUBLIC POLICY

An excellent discussion on limiting liability for your own negligence appears in

175 A.L.R. 8. The following analysis is excerpted from page 25 of this annotation:

"* * * according to the great weight of authority the parties may validly bind themselves by contract to indemnify the indemnitee against or relief from liability on account of his own future acts of negligence. Some of the courts in reaching this result stress the analogy between these contracts and insurance policies especially automobile liability insurance policies, or liability statutes, while other reach the same result independently, as by referring to the principle of freedom of contract or by simply stating that such contracts do not violate public policy. Again, the contention that such contracts are an inducement to negligence has been rejected as 'fanciful' and untenable in view of the many automobile liability insurance policies in existence.

"However, such contracts are invalid if they tend to promote a breach of duty to the public."

Arizona has not heretofore ruled on whether it is against public policy to indemnify a tort-feasor for his own negligence. The Arizona Supreme Court in Heckman v. Harris, 66 Ariz. 360, 188 P.2d 991 (1948) refused enforcement of an indemnity agreement indemnifying against the consequences of an act which was illegal.

■ The apparent majority view, and we believe the better rule, upholds contracts indemnifying the indemnitee from liability resulting from his own negligence. 42 C.J.S. Indemnity § 7, p. 573; Restatement, Contracts § 572 (1932). We hold that contracts indemnifying the indemnitee against his own negligence do not violate public policy.

■ Appellants urge that this principle is not applicable because "Fluor is charged with the duty of public service." No au-thority is cited holding that a subcontractor on a contract with the United States government is necessarily within the purview of the "public service" exception. The previously mentioned A.L.R. Annotation includes among those engaged in public service the following: public service corporations (gas, telephone, telegraph, electric power, and turnpike), railroad companies, lessors and lessees, banks and customers, and bailments. This contract does not promote a breach of duty to the public.

## CONSTRUCTION OF CONTRACT NOT EXPRESSLY REFERRING TO NEGLIGENCE

■ The majority view apparently requires express reference to the indemnitee's negligence to cover losses occasioned thereby. This view stems from the application of a strict construction against indemnity clauses.

The language of the contract provides that Graver will indemnify Fluor "from all claims * * * of whatever nature arising out of the services, labor, equipment and materials furnished by * * *" Graver; and that Graver "* * * assumes entire responsibility and liability for all losses * * * in connection with or arising out of any injury * * *" sustained in connection with or arising out of the performance of Graver's work.

We find the manifestation of intent by the parties sufficiently capacious to include the negligent act of the indemnitee.[1] Inclusion of the phrase "indemnitee's negligence" could not increase the breadth of the language accepted by the parties. Though we may be following the minority view, we believe that to hold that the parties meant all losses, except those occasioned through the indemnitee's negligence, would be to rewrite the contract.

1. See Payne v. National Transit Co., 300 F. 411 (D.C.1921); General Acc. Fire & Life Assur. Corp., Ltd. v. Smith and Oby Co., 272 F.2d 581, 77 A.L.R. 2d 1134 (6 Cir. 1959); St. Paul Mercury Indemnity Co. v. Kopp, Ohio App., 121 N.E.2d 23, 70 Ohio Law Abst. 259 (1954); New Amsterdam Casualty Co. v. Kilroy Structural Steel Co., Ohio App., 159 N.E. 2d 797, 81 Ohio Law Abst. 527 (1959) which contain indemnity provisions germane to ours and hold likewise.

From the broad language used it would appear immaterial whether the negligent act was that of a volunteer, a stranger or an employee of the indemnitee, so long as it occurred in connection with the performance of the work required of Graver.

Appellant insists that the language of the indemnity provision contemplates that the damages must be "caused" by the services, labor, equipment and material furnished by Graver or by the performance of the work by Graver. The appellant equates the word "caused," a term not used in the contract, with the contract language "sustained in connection with or arising out of." In Webster's Third International Dictionary "cause" means to serve as the occasion of, bring into existence or make. Since the contract is not limited to this restrictive term, we conclude that the argument is without merit.

Appellant asserts that if we construe this provision to include negligence then the indemnification for negligence must be separable or the entire provision falls. Appellant reasons thus: there is no language limiting the indemnification to negligence, so all other fault is included (wanton, reckless, intentional and malicious conduct), that indemnification for such conduct is against public policy, and so the provision indemnifying for negligence must be separable, or the entire provision falls.

■ We are not confronted with a problem requiring indemnification of an illegal act or an act the nature of which would be contra to public policy. Therefore, we will follow the Restatement, Contracts § 236(a) (1932) which was quoted with approval in Tyson v. Tyson, 61 Ariz. 329, 149 P.2d 674 (1944).

"An interpretation [of a contract] which gives a reasonable, lawful and effective meaning to all manifestations of intention is preferred to an interpretation which leaves a part of such manifestations unreasonable, unlawful or of no effect."

## PAROL EVIDENCE

■ The appellant also contends that it was error to admit parol evidence because the indemnity provision was unambiguous, or alternatively if the court finds the provision ambiguous then it was error to admit certain testimony. These provisions do, on their face, clearly include indemnification for Fluor's negligence when the damage is "sustained in connection with" or arises out of the performance of Graver's work. Since the language is plain and unambiguous, parol evidence should not have been admitted.[2]

■ However, there is no reversible error for both parties agree that the trial court found that none of the evidence admitted changed the result of the case. The court's minute entry ordering judgment provided in part:

"As stated in the Court's ruling entered on March 5, 1963, the language of the contract is clear. This language indemnifies and saves Fluor harmless from all claims of whatever nature arising out of the services furnished by Graver. Sykes v. Fluor, Pima County Superior Court Case No. 71625, of which this Court takes notice, indicates that at the time the cause of action arose, the deceased was Graver's employee working within the scope of his employment.

"The evidence adduced at trial as to the purposes and objects of the contract, as well as the situation of the parties, in no way indicates a construction of the contract other than indemnification of Fluor on the Sykes claim. Therefore, the indemnification agreement is effective."

2. See Gust K. Newburg Const. Co. v. Fischbach, etc., Inc., 46 Ill.App.2d 238, 196 N.E.2d 513 (1964); Patent Scaffolding Co. v. Standard Oil Co. of Ind., 68 Ill.App.2d 29, 215 N.E.2d 1 (1966), where indemnification provisions meet the clear and unequivocal language test and the courts pointed out that the unambiguous provisions precluded the application of rules of construction to vary the clear meaning.

When a case is tried to the court without a jury and improper evidence is admitted, there is no reversible error if there is competent evidence to support the judgment. Johnson v. Hill, 1 Ariz.App. 290, 402 P.2d 225 (1965).

For reasons stated herein, the judgment is affirmed.

KRUCKER, C. J., and MOLLOY, J., concur.