William WARBURTON, Plaintiff,

v.

PHOENIX STEEL CORPORATION, a Delaware corporation, et al., Defendants,

v.

A. E. WARBURTON & SONS, INC., a Delaware corporation, Third-Party Defendant.

Superior Court of Delaware,
New Castle.

June 6, 1974.

Wilfred J. Smith, Jr., Wilmington, for plaintiff.

William F. Taylor and Jack B. Jacobs, Wilmington, for defendants Phoenix Steel Corp. and Northern Del. Industrial Development Corp.

James T. McKinstry, Wilmington, for defendant E. W. Bliss Co.

David Snellenburg, II, Wilmington, for defendant Noble J. Dick, Inc.

James A. Walsh, Wilmington, for third-party defendant A. E. Warburton & Sons, Inc.

## OPINION ON MOTIONS FOR SUMMARY JUDGMENT

TAYLOR, Judge.

Plaintiff, an employee of A. E. Warburton and Sons, Inc. [Warburton], was injured while working at the steel plant of Phoenix Steel Corporation [Phoenix] at Claymont, Delaware.[1] Phoenix had contracted with E. W. Bliss Company [Bliss] to make certain improvements in the steel plant. Bliss, in turn, had contracted with Noble J. Dick, Inc. [Dick] to perform some of the work for which Phoenix and Bliss had contracted. Dick, in turn, had contracted with Warburton to perform work provided under the contract between Bliss and Dick. Plaintiff sued Dick, Bliss, Phoenix and Northern. Phoenix and Northern claim indemnification from Dick. Dick claims indemnification from Warburton. Bliss claims indemnification from Dick and from Warburton. Bliss claims exoneration or contribution from Phoenix and Dick. Dick claims exoneration or contribution from all defendants.

Bliss has moved for summary judgment against plaintiff. Dick has moved for summary judgment against plaintiff and against Bliss, Phoenix and Northern. Phoenix and Northern have moved for summary judgment against Dick. This opinion deals with the motions for summary judgment made by Phoenix, Northern, Bliss and Dick.

## INDEMNIFICATION BY DICK

I shall first consider the contentions made by Dick in support of its motion for summary judgment. First, Dick contends that it is not liable for indemnification under a provision in the contract between Bliss and Dick.[2]

In State v. Interstate Amiesite Corporation, Del.Supr., 297 A.2d 41 (1972), the Delaware Supreme Court held that a contracting party is not entitled to indemnification against its own negligence unless the contract language is crystal clear or

---

1. Phoenix leases the steel plant from Northern Delaware Industrial Development Corporation [Northern].

2. "Section 17. *Indemnification.* "The Contractor agrees to protect, indemnify and save harmless the Lessor, Owner and Prime Contractor against all claims, liabilities, losses, damages, and expenses of every character whatsoever, for injuries to any person, including death, sustained by the Contractor, the employees of the Contractor, the employees of the Owner, Prime Contractor and/or other persons, and for injury or damage to property of any kind by whomsoever owned, caused by, resulting from, arising out of, or occurring in connection with the performance of the work, or incidental to or appertaining thereto and whether or not such injury is due to or chargeable to any negligence of the Contractor, the Owner, the Prime Contractor and/or any Subcontractor including their agents and employees. As the result of any such claim, suit, or demand of any kind, Contractor agrees to assume at his own expense, on behalf of Lessor, Owner and/or Prime Contractor and at its demand, the defense of any action at law or in equity which may be brought against Lessor, Owner and/or Contractor and to pay on behalf of Lessor, Owner and/or Prime Contractor, the amount of any judgment that may be entered against Lessor, Owner and/or Prime Contractor." (Amended cross-claim by Bliss against Dick)

sufficiently unequivocal to show that the contracting party intended to indemnify the indemnitee for the indemnitee's own negligence. See also, Powell v. Interstate Vendaway, Inc., Del.Super., 300 A.2d 241 (1972). A close scrutiny of the indemnification language is required. First, by its terms, the indemnification by the contractor [Dick] protects the lessor [Northern], the owner [Phoenix], and the prime contractor [Bliss]. Next, it is protection against—all claims, liabilities, losses, damages and expenses of every character whatsoever—for injuries to any person including death—sustained by the contractor [Dick], the employees of the contractor [Dick], the employees of the owner [Phoenix], prime contractor [Bliss], and/or other persons—and for injury or damage to property of every kind by whomsoever owned—caused by, resulting from, arising out of, or occurring in connection with the performance of the work, or incidental to or appertaining thereto—and whether or not such injury is due to or chargeable to any negligence of the contractor [Dick], the owner [Phoenix], the prime contractor [Bliss], and/or any subcontractor including their agents and employees.

 The requirement is that the language of the indemnity provision address itself to the subject of the negligence of the indemnitee and by its terms show a clear and unequivocal intention that the indemnitee was intended to be indemnified against its own negligence. In this instance, the provision states that it applies "whether or not such injury is due to or chargeable to any negligence of the contractor, the owner, the prime contractor and/or any subcontractor including their agents and employees". Negligence of the prime contractor [Bliss] is, thus, specifically referred to as a recognized basis of injury to which the indemnification applies. While the language is not as concise

as that upheld by the Delaware Supreme Court in Allstate Investigation and Security Agent v. Turner Construction Company, Del.Supr., 301 A.2d 273 (1972),[3] I find that the language of this indemnification provision meets the test of State v. Interstate Amiesite Corporation, supra, and that Bliss is entitled to indemnification from Dick for claims based on injuries due to or chargeable to negligence of Bliss if the injured party was within the class of persons referred to in the indemnification provision.

The next contention is that the indemnification provision does not cover injuries to employees of subcontractors. The pertinent portion provides indemnification against claims, liabilities, etc. "for injuries to any person, including death, sustained by the contractor, the employees of the contractor, the employees of the owner, prime contractor and/or other persons". Specific reference is made to employees of the contractor and employees of the owner. There is no specific reference to employees of a subcontractor. From this, Dick argues that the employees of a subcontractor are not within the class for which indemnification is provided. Here again, the argument is that the provision should be strictly construed against indemnification. In making this contention, Dick relies on the authorities which hold that indemnity for one's own negligence will not be applied unless it very clearly appears that the parties intended such protection. The Court has found above that the indemnity clause meets the test and that Bliss is entitled to indemnification even though an injury may have been caused by Bliss' own negligence. It should be noted at this point that the injury which is involved here is not an injury to Bliss or to an employee of Bliss. The question here is whether the indemnity clause in referring to injuries sustained by "other persons" en-

3. There the indemnification provision referred to "alleged active or passive negligence or participation in the wrong or upon any al- leged breach of any statutory duty or obliga- tion" on the part of the indemnitee.

compasses an injury to an employee of a subcontractor of Dick.

Dick relies on Altemus v. Pennsylvania Railroad Company, D.Del., 210 F.Supp. 834 (1962) for the proposition that the class of persons to be covered by the indemnification must be clearly set forth. In *Altemus,* the indemnity agreement did not provide for indemnification of the indemnitee's own negligence, and there was doubt as to whether the agreement covered employees of both parties to the indemnity agreement. Here, the agreement clearly shows an intention to indemnify against the indemnitee's own negligence, and the agreement clearly shows an intention to cover employees of all of the parties to the agreement. The issue here is whether the agreement covers an employee of a subcontractor who was not a party to the agreement.

Norkus v. General Motors Corporation, S.D.Ind., 218 F.Supp. 398 (1963), also failed to refer specifically to employees of one of the parties to the agreement and failed to show an unequivocal intent to indemnify against the indemnitee's own negligence. The latter deficiency also existed in Northwestern National Insurance Company v. Dade County, 5 Cir., 461 F.2d 1158 (1972), cited by Dick. The final case cited by Dick on this point is West Virginia Sanitary Engineering Corporation v. Kurish, W.Va., 74 S.E.2d 596 (1953) which involved the phrase "other person" found in a mechanic's lien statute. The decision turns upon the Court's determination of the legislative purpose and the history of the statute and is not useful here.

It cannot be overlooked that in Bar Steel Construction Corporation v. Read, Del. Supr., 277 A.2d 678 (1971) the class of persons whose injuries were covered by the indemnity clause was held to be sufficiently defined by the phrase "any and all persons" to include the contractor's employee and *the subcontractor's employee,* where the agreement made it clear that the indemnification protected the indemnitee against indemnitee's own negligence.

The Court concludes that the indemnification language involved here is sufficient to encompass employees of the subcontractor of Dick.

It is noted above that indemnification by Dick under the Bliss-Dick contract runs in favor of the lessor [Northern], owner [Phoenix] and the prime contractor [Bliss], and any subcontractor. The provision protects the above parties even if the injury is due to or chargeable to negligence of the contractor [Dick], the owner [Phoenix], the prime contractor [Bliss], or any subcontractor. Notably missing from the enumeration of those whose negligence is indemnified by Dick is the lessor [Northern]. No specific language of the provision indicates an intention to indemnify Northern against the results of its own negligence. Hence, Northern does not meet the test of State v. Interstate Amiesite Corporation, supra. Accordingly, based upon the indemnification provision of the Bliss-Dick contract, Dick's motion for summary judgment against Bliss, Phoenix and on the issue of indemnification is denied. Dick's motion for summary judgment against Northern is granted. The motion of Phoenix for summary judgment against Dick is granted.

## RELEASE OF DICK BY BLISS

Dick also seeks summary judgment against Bliss based upon a release.

■ On August 24, 1970, Bliss and Dick executed an instrument titled General Release and Indemnity Agreement. The agreement is very intricately worded. It is not necessary at this stage to scrutinize the releasing language of the agreement because of the following language which appears at the end of the agreement:

"This General Release and Indemnity Agreement constitutes the entire agreement of the compromise of disputed claims and is not to be construed as an admission of liability on the part of either party, and there are no oral or oth-

er agreements, and no other representations."

It will be noted that this paragraph states that the General Release Agreement is the agreement of the compromise of disputed claims. Bliss contends that this language shows that the "general release" was intended only to deal with matters which had been disputed between the parties and that other matters which were not then disputed, such as liability under the indemnity provision, were not intended to be affected by the "general release". It is sufficient for purposes of this motion, to hold that the General Release Agreement is not so clear and unequivocal as to preclude inquiry into what was intended by the quoted language. 3 Corbin on Contracts, 100–29, § 542. The Court must ascertain what was the intent of the parties when they used the particular language in the agreement. Tull v. Turek, 38 Del.Ch. 182, 147 A.2d 658 (1958). Summary judgment on this issue must be denied.

## BLISS' MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF

 Bliss has moved for summary judgment against plaintiff on the grounds that as a matter of law there is no showing of negligence on the part of Bliss. Plaintiff's charge against Bliss is that Bliss, being the prime contractor on the project, failed to take reasonable steps to see that the premises were safe, that it maintained a crosswalk which was not properly anchored, that it failed to ascertain that the metal or ingot which passed through the mill was a proper temperature or composition to insure that it would be ejected in a horizontal position and that a closed circuit television camera was not functioning properly.

The rolling mill where plaintiff was injured was designed by Bliss. It had been in operation for about two months and on the day of plaintiff's injury the mill was being operated by an employee of Phoenix. Bliss was not involved in the operation at that time. A crosswalk had been designed, built and installed by Phoenix above the rolling mill to permit employees to pass from one side of the rolling mill to the other. The crosswalk was three or four feet above the rollers of the mill. It was not secured in place. Immediately prior to plaintiff's injury, a sheet of steel had come through the rollers with its forward end curled up like a ski. The operator of the rolling mill felt that he had to bring the sheet completely through the rollers because the metal was cooling. In doing this, the curled-up portion of the plate came into contact with the crosswalk and caused it to fall over. While the sheet was being rolled, plaintiff walked up to the crosswalk. Upon being warned, he attempted to get off the crosswalk, but was pinned down by the crosswalk as it fell.

Plaintiff contends that Bliss, which designed and was responsible for installing the rolling mill, provided an improper design. First, plaintiff contends that the defective design of the mill caused excessive turn-up of the rolled steel and that the stripper guides which were designed by Bliss did not properly control the situation. While Bliss denies this, it is sufficient for purposes of this motion for summary judgment to note that Bliss has not referred to factual evidence in the record which establishes beyond reasonable inference that no defect such as that charged by plaintiff exists.

Second, plaintiff contends that Bliss improperly designed the mill so that the mill was visible to the operator only by use of a closed circuit television camera which was so located that it could be destroyed during the operation of the mill. Here again, Bliss has not demonstrated an absence of fact dispute on the question of whether the design was reasonable or defective. Bliss contends that the closed circuit television was not important here because the operator could see the crosswalk directly without television. It is noted that the steel plate struck the crosswalk when the operator was attempting to move the plate clear of the roller at the end of the plate. Apparently the operator had to keep track of

both the forward and the back end of the plate. It is not at all clear that if the closed circuirt television had been working, or if some other means of viewing that portion of the mill had been provided, it would have been necessary for the plate to have been moved to the point of contact with the crosswalk. Factually, the matter is not ripe for summary judgment.

Finally, Bliss argues that the action of the mill operator, who was Phoenix's employee, was the proximate cause of the injury, and that the elements of negligence charged against Bliss, even if true, were remote and not proximate causes of the injury.

The Delaware Supreme Court said in McKeon v. Goldstein, 3 Storey 24, 164 A. 2d 260 (1960):

> "The question of proximate cause is usually a question of fact to be determined by the trier of facts. [Cases cited]. This is so even in cases where there is no serious dispute concerning the material facts if the inferences to be drawn therefrom are reasonably capable of more than one conclusion."

In McKeon, after discussing the facts, the Court concluded:

> "We think that more than one inference may be drawn from the evidence. Hence the determination of proximate cause is a question of fact for the trier of facts and not for the Court to decide as a matter of law."

The test, therefore, is whether more than one inference involving a necessary element of proximate cause could be drawn from the evidence.

In McKeon, the Supreme Court listed three questions to be resolved in determining proximate cause. Applying those questions to the facts of this case, the first is whether the negligence of the later participating party [Phoenix] constituted an independent act of negligence or alternatively whether it followed in unbroken sequence the assumed negligence of the party which was responsible for the surroundings in which the event occurred [Bliss]. The second is whether the party which was responsible for the surroundings in which the event occurred [Bliss] could have foreseen that a curled sheet of steel might come into contact with the crosswalk and thereby cause injury to a person using the crosswalk. The third is whether the failure of the party which was responsible for the surroundings in which the event occurred [Bliss] to foresee the above possibility amounted to negligence. It is recognized that in the instant case one portion of the surroundings, namely, the crosswalk, was created by Phoenix. However, it is not contended that Bliss was unaware of the existence of the crosswalk, that Bliss was unaware that some steel plates were curling, or that the crosswalk was unsafe if the steel had not curled. It does not appear that the mill was being operated in a different manner than was contemplated by the parties. The Court cannot conclude that all inferences which can be drawn from the facts permit Bliss to pass the test of McKeon.

## DICK'S MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF

■ Dick seeks summary judgment against plaintiff on the ground that the facts do not show evidence of negligence on the part of Dick.

It appears that Dick installed the machinery at the Phoenix Steel mill. It is not contended that Dick failed to install the machinery in accordance with the design.

Plaintiff says that Dick may have taken some part in the design, but merely relies on testimony of a Phoenix representative that he doesn't know whether Dick participated in the design. Dick points to no factual statement by anyone, whether Dick's representative or otherwise, that Dick did not participate in the design.

Plaintiff has the burden of proving negligence. Plaintiff has shown no facts indicating that Dick participated in the design which plaintiff challenges or that Dick negligently installed the machinery. No facts or inferences viewed most favorably to plaintiff support plaintiff's charge of negligence on the part of Dick. Phillips v. Delaware Power & Light Co., Del.Supr., 216 A.2d 281 (1966). Accordingly, Dick's motion for summary judgment against plaintiff is granted.

In summary:

(a) The motion of Dick for summary judgment against Bliss and Phoenix on the issue of indemnification is denied.

(b) The motion of Dick for summary judgment against Northern is granted.

(c) The motion of Dick for summary judgment against Bliss on the issue of the release is denied.

(d) The motion of Phoenix for summary judgment against Dick is granted.

(e) The motion of Bliss for summary judgment against plaintiff is denied.

(f) The motion of Dick for summary judgment against plaintiff is granted.

It is so ordered.