817 P.2d 3

**WASHINGTON ELEMENTARY SCHOOL DISTRICT NO. 6, Cross Claimant–Appellee,**

v.

**BAGLINO CORPORATION, an Arizona corporation, Cross Defendant–Appellant.**

**No. CV–91–0040–PR.**

Supreme Court of Arizona, En Banc.

Sept. 12, 1991.

Broening Oberg & Woods by Brian Holohan, William A. Holohan, Phoenix, for cross claimant-appellee.

Copple, Chamberlin & Boehm, P.C. by Thomas J. Chamberlin, Scott E. Boehm, Phoenix, for cross defendant-appellant.

## OPINION

GORDON, Chief Justice.

## JURISDICTION

Washington Elementary School District No. 6 (School District) petitioned for review of the court of appeals' memorandum decision reversing the trial court's ruling that the contract indemnity provision between the School District and Baglino Corporation (Baglino) obligated Baglino to indemnify the School District for losses caused in part by the School District's active negligence. Specifically, the issue is whether the indemnity provision in the standard American Institute of Architects (AIA) construction contract obligates the contractor/indemnitor (Baglino) to indemnify the owner/indemnitee (School District) for losses caused in part by the indemnitee's active negligence. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), and A.R.S. § 12–120.24.

## FACTUAL AND PROCEDURAL HISTORY

The parties stipulated to the basic facts in the trial court. The School District and Baglino entered into a contract for the construction of an addition to Arroyo Elementary School. During construction, a subcontractor stacked roof trusses on the project site. A child was injured when one of the trusses fell on him. The parties stipulated that (1) the subcontractor was actively negligent in selecting the site and manner in which the trusses were stacked, (2) the School District's employees were aware of the manner in which the trusses were stacked and the School District was actively negligent for failing to take steps to either warn of or eliminate the unreasonable risk of harm caused by the trusses, and (3) the negligence of the subcontractor and the School District each contributed to the child's injuries.

The contract between the School District and Baglino contained an indemnification provision that states:

4.18 INDEMNIFICATION

4.18.1 To the fullest extent permitted by law, the Contractor [Baglino] shall indemnify and hold harmless the Owner [School District] and the Architect and their agents and employees from and against all claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from the performance of the Work, provided that any such claim, damage,

loss or expense (1) is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) including the loss of use resulting therefrom, and (2) is caused in whole or in part by any negligent act or omission of the Contractor, any Subcontractor, anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable, regardless of whether or not it is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or otherwise reduce any other right or obligation of indemnity which would otherwise exist as to any party or person described in this Paragraph 4.18.

The School District tendered the defense of the injured child's claim to Baglino, but Baglino refused to defend the School District. Ultimately, the School District settled the child's claim. It then cross-claimed against Baglino. The trial court, based on the stipulated facts, granted judgment to the School District for the amounts it expended in defending and settling the injured child's claim. The court of appeals reversed on the basis that the indemnity provision failed to meet the stringent standards required for indemnification of an indemnitee for its own acts of negligence. *Washington Elementary School Dist. No. 6 v. Baglino Corp.,* 1 CA–CV 89–308 (Nov. 29, 1990) (mem.). Because we find the provision's language indemnifies the School District from the consequences of its own negligence, we reverse the court of appeals' decision and deny Baglino's request for attorney's fees.

## DISCUSSION

The School District argues that the court of appeals incorrectly applied existing standards for interpreting and enforcing the indemnity provision. It also argues that these standards should be modified by this court in light of a modern trend toward giving broader effect to indemnity provisions that parties use to allocate risks between them.

Baglino responds that the court of appeals correctly applied the rule that a party seeking indemnity from the consequences of its own negligence must express that intent in clear and unequivocal terms. It further states that Arizona has followed the modern trend since 1966, when the court of appeals held that contracts indemnifying an indemnitee against his own negligence do not violate public policy. *See Graver Tank & Mfg. Co. v. The Fluor Corp.,* 4 Ariz.App. 476, 478, 421 P.2d 909, 911 (1966).

Both parties agree that the indemnity provision applies if it clearly and unequivocally states that a party may be indemnified for its own negligence. The provision at issue here required Baglino to indemnify the School District *"regardless of whether or not [the injury] is caused in part by a party indemnified hereunder."* (Emphasis added.)

The court of appeals apparently relied on *Allison Steel Manufacturing Co. v. Superior Court* to reverse the trial court. *See* 22 Ariz.App. 76, 523 P.2d 803 (1974). The court of appeals and both parties appear to have misread this case as construing language identical to the indemnity provision at issue here. The parties claim that *Allison Steel* held that the indemnification clause in the contract, which is identical to the clause in this case, was not sufficiently clear and unequivocal to provide indemnity for a negligent indemnitee.

*Allison Steel* involved a dispute between a general contractor (Sundt) and a subcontractor (Allison) as to liability for injuries suffered by any subcontractor employee. Sundt's contract with Allison included an indemnity provision whereby Allison agreed to indemnify Sundt, and further agreed that

[Allison] shall assume toward the Contractor all the obligations and responsibilities that the Contractor assumes toward the Owner, as set forth in the Principal Contract ... and other documents ... insofar as applicable, generally or specifically, to the materials to be furnished, the work to be performed and the

responsibilities to be assumed under this Subcontract.

*Id.* at 78–79, 523 P.2d at 805–06.

The Principal Contract, which was incorporated by reference, contained an indemnity provision identical to the provision used here except that it did not include the introductory phrase "[t]o the fullest extent permitted by law." *See id.*

*Allison Steel* actually held that the *subcontract* failed to meet "the stringent standard" that "the intention to compensate the indemnitee for his own negligence must be expressed in 'clear and unequivocal terms.'" *Id.* at 80, 523 P.2d at 807. It found that the incorporation by reference did not meet this standard. It did not construe that indemnity provision in the contract between Allison and the owner as inadequate; in fact, it did not construe the provision at all. Therefore, we do not find *Allison Steel* dispositive as to whether the indemnification clause in this case indemnifies the School District for its active negligence.

In *Graver Tank,* the court of appeals held that contracts indemnifying a party against his own negligence do not violate public policy. 4 Ariz.App. at 478, 421 P.2d at 911. Since then, Arizona courts have enforced such contracts. *See, e.g., Superior Cos. v. Kaiser Cement Corp.,* 152 Ariz. 575, 733 P.2d 1158 (App. 1986); *Estes Co. v. Aztec Constr., Inc.,* 139 Ariz. 166, 677 P.2d 939 (App.1983). An indemnity contract, however, will be strictly construed and generally will not protect an indemnitee against his own negligence unless the indemnitor's obligation to do so is expressed in clear and unequivocal terms. *Pioneer Roofing Co. v. Mardian Constr. Co.,* 152 Ariz. 455, 474, 733 P.2d 652, 671 (App.1986); *Allison Steel,* 22 Ariz. App. at 80, 523 P.2d at 807.

It has been the general rule that under a general indemnity agreement "an indemnitee is entitled to indemnification for a loss resulting in part from an indemnitee's passive negligence, *but not active negligence." Pioneer Roofing,* 152 Ariz. at 474, 733 P.2d at 671; *Estes Co.,* 139 Ariz. at

169, 677 P.2d at 942. A general indemnity clause is one that does "not specifically address what effect the indemnitee's negligence [will] have on the indemnitor's obligation to indemnify." *Pioneer Roofing,* 152 Ariz. at 474, 733 P.2d at 671; *see Estes Co.,* 139 Ariz. at 168–69, 677 P.2d at 941–42; *Morton Thiokol, Inc./Morton Salt Div. v. Metal Bldg. Alteration Co.,* 193 Cal.App.3d 1025, 1027–28, 238 Cal.Rptr. 722, 723 (Cal.App.1987).

Although we ordinarily follow the above rule, that a party will not be indemnified for its own active negligence under a general indemnification agreement, we also believe that a mechanical application of it should be avoided in determining the parties' intent. Relying exclusively on the active/passive distinction in determining whether an indemnity agreement applies in a given case may prevent an agreement from being enforced as the parties intended. Some states, including Arizona, look at the contract itself or at the all-encompassing language of the indemnification clause in order to find an intent to indemnify the indemnitee for his own negligence. *Superior Cos.,* 152 Ariz. at 577, 733 P.2d at 1160; *Morton Thiokol,* 193 Cal.App.3d at 1027–28, 238 Cal.Rptr. at 723; *Drzewinski v. Atlantic Scaffold & Ladder Co.,* 521 N.Y.S.2d 216, 218, 70 N.Y.2d 774, 777, 515 N.E.2d 902, 904 (1987). There is, however, no requirement that the term negligence actually be used, or that specific reference be made to liability arising out of the indemnitee's negligence. *See, e.g., Gulf Oil Corp. v. Burlington N. R.R., Inc.,* 751 F.2d 746, 748–49 (5th Cir.1985) (construing Texas' "clear and unequivocal rule"); *Drzewinski,* 515 N.Y.S.2d at 218, 70 N.Y.2d at 777, 515 N.E.2d at 904.

Therefore, we must determine whether the words in this particular indemnity provision, "regardless of whether or not [the injury] is caused in part by a party indemnified hereunder," clearly and unequivocally protect the School District against its own active negligence. We believe they do. The words "caused in part" are broad enough to encompass behavior that includes the indemnitee's active negli-

gence. By using such broad language, it appears that the parties contemplated coverage for any type of damage caused by the negligent behavior of the indemnitor, even though also caused in part by the active negligence of the party indemnified. Thus, we hold that where, as here, the agreement clearly and unequivocally indicates that one party is to be indemnified, regardless of whether or not that injury was caused in part by that party, indemnification is required notwithstanding the indemnitee's active negligence.

## DISPOSITION

We conclude that the indemnity provision in the contract between Baglino and the School District obligates Baglino to indemnify the School District for losses caused in part by the School District's active negligence. We vacate the court of appeals' decision and affirm the trial court's ruling. Baglino's request for attorney's fees is denied.

FELDMAN, V.C.J., and CAMERON and MOELLER, JJ., concur.

CORCORAN, Justice, dissenting:

I respectfully dissent. Unlike the majority, I do not find that the indemnity provision at issue in this case, "regardless of whether or not [the injury] is caused in part by a party indemnified hereunder," expresses a clear and unequivocal intention that Baglino indemnify the School District against the District's own active negligence.

I find the majority's conclusion problematic in several respects. First, the majority reasons that the words "caused in part" are broad enough to encompass behavior that includes active negligence. The majority concludes, therefore, that the words "caused in part" clearly and unequivocally express the parties' intention that Baglino indemnify the School District for the District's own active negligence.

The clear and unequivocal standard, however, requires "that *the language* of the indemnity provision address itself to the subject of *the negligence of the indemni-*

tee and *by its terms* show a clear and unequivocal intention that the indemnitee was intended to be indemnified against its own negligence." *Warburton v. Phoenix Steel Corp.*, 321 A.2d 345, 347 (Del.Super.Ct.1974), *aff'd, Noble J. Dick, Inc. v. Warburton*, 334 A.2d 225 (Del.1975) (emphasis added). The words "caused in part," which address *causation*, are not coextensive with negligence. That is, "[w]hile causation may encompass negligent acts or omissions, it also covers matters which do not fall within the concept of negligence." *Sweetman v. Strescon Indus., Inc.*, 389 A.2d 1319, 1321 (Del.Super.Ct.1978).

By interpreting the language "caused in part" as a clear and unequivocal expression of the parties' intention to include active negligence thereunder, the majority has in effect read the term "negligence" into the indemnity provision. Yet, the term "negligence" is not specifically included in the provision as written. Like the court in *Batson–Cook Co. v. Industrial Steel Erectors*, 257 F.2d 410, 413 (5th Cir.1958), I believe that a clear and unequivocal expression of intention "cannot come from reading into the general words used the fullest meaning which lexicography would permit." Therefore, because the indemnity provision fails to address specifically the School District's potential *negligence*, it fails to express a clear and unequivocal intention that Baglino indemnify the School District for the District's own active negligence.

Second, the majority concludes that the "broad language" of the indemnity provision indicates that the parties contemplated coverage for any type of negligent behavior by the School District. I find this conclusion dubious. Although the School District may have contemplated indemnity for its own active negligence, I am not convinced that Baglino contemplated any such result with respect to the particular provision at issue.

Further, and contrary to the majority's conclusion, "the test is not whether the indemnification language [is] *broad enough* to cover negligence of the indemni-

tee, ... [t]he test is whether *the contract language specifically focused attention on the fact that by the agreement the indemnitor was assuming liability for the indemnitee's own negligence.*" *Sweetman,* 389 A.2d at 1321 (emphasis added). The indemnity provision at issue fails to pass this test because it does not *specifically* focus attention on the fact that by the agreement Baglino was assuming liability for the School District's own active negligence. *Id.* Moreover, this court has recognized that there are "conceptual bounds [in] treating standardized, formal contracts as if they were traditional 'agreements,' reached by bargaining between the parties." *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.,* 140 Ariz. 383, 389, 682 P.2d 388, 394 (1984). By assuming that Baglino understood the words "caused in part" to mean that it must indemnify the School District for the District's own active negligence, the majority exceeds those bounds.

The majority also rejects a "mechanical application" of the accepted rule that under a general indemnity agreement (which is what we are dealing with here), "an indemnitee is entitled to indemnification for a loss resulting in part from an indemnitee's passive negligence, *but not active negligence,*" *Pioneer Roofing,* because "in a given case [the application of the rule] may prevent an agreement from being enforced as the parties intended." This is not that "given case." The School District does not claim, and the majority fails to cite any evidence indicating, that the intention of the parties is different from that contained in the ambiguous, boilerplate provision we are analyzing.

Finally, the majority's conclusion simply encourages repetitive litigation initiated solely to determine whether an indemnity provision is *sufficiently* clear and unequivocal to require an indemnitor to bear the burden of an indemnitee's active negligence. Such litigation is neither a recent development nor an infrequent occurrence. *See* Annotation, *Liability of Subcontractor Upon Bond or Other Agreement Indemnifying General Contractor Against Liability for Damage to Person or Property,* 68 A.L.R.3d 7 (1976); Annotation, *Building Contractor's Liability, Upon Bond or Other Agreement to Indemnify Owner, for Injury or Death of Third Persons Resulting from Owner's Negligence,* 27 A.L.R.3d 663 (1969). Given the extent of this problem, "it is not too much to require [parties] to stop waging verbal duels and to state unmistakably whether or not a contract purports to burden the indemnitor with another's negligence." *Jordan v. City of New York,* 3 A.D.2d 507, 514, 162 N.Y.S.2d 145, 152 (1957) (Botein, J., dissenting), *majority aff'd,* 5 N.Y.2d 723, 152 N.E.2d 667, 177 N.Y.S.2d 709 (1958). Therefore, I advocate a bright-line rule that requires an indemnity provision to refer, by an *express* stipulation, to an indemnitee's own active negligence as a prerequisite for such indemnification. The indemnification provision should permit no cavil.

That which the majority and the trial court find to be clear and unequivocal is not clear and unequivocal to the judges of the court of appeals or to me. It may be time for the American Institute of Architects to revise the provision in question.

I agree with the conclusion of the court of appeals and would reverse the judgment entered in the trial court.