980 P.2d 489

**Mark C. CUNNINGHAM and Wendy A. Cunningham, husband and wife, Plaintiffs/Appellees/Cross–Appellants,**

v.

**GOETTL AIR CONDITIONING, INC., an Arizona corporation, Defendant/Appellant/Cross–Appellee.**

No. CV–97–0511–PR.

Supreme Court of Arizona,
En Banc.

May 19, 1999.

Lewis and Roca, LLP by Susan M. Freeman, Phoenix, Attorney for Appellee, Cross–Appellant.

Jones Skelton & Hochuli by William J. Schrank and Eileen J. Dennis, Phoenix, Attorneys for Appellant, Cross–Appellee.

Plattner Verderame, P.C. by Richard S. Plattner, Gage & Mathers, Ltd. by G. David Gage, Phoenix, Attorneys for Amicus Curie Arizona Trial Lawyers Association.

Morrison & Hecker, LLP by Michael L. Parrish and Monty L. Greek, Phoenix, Attorneys for Amicus Curie State of Arizona.

Snell & Wilmer, LLP by John J. Bouma, Sr. and Patrick G. Byrne and Jennifer L. Hadley, Phoenix, Attorneys for Amicus Curie Arizona Association of Defense Counsel.

## OPINION

McGREGOR, Justice.

¶ 1 Goettl Air Conditioning (Goettl) and Washington Street Investments (WSI) entered a lease agreement that included a provision requiring Goettl, the lessee, to indemnify and hold harmless WSI, the lessor, against specified claims and expenses. We accepted review to determine whether and, if so, to what extent, Goettl is bound by a stipulated judgment that WSI entered to settle a tort action in which the plaintiff, alleging he suffered injuries on the leased premises, named WSI as a defendant.

### I.

¶ 2 Mark Cunningham, an employee of Goettl, fell through a skylight on the roof of a building Goettl leased from WSI and suffered a severe back injury. Cunningham applied for and received workers' compensation benefits pursuant to Arizona Revised Statutes (A.R.S.) § 23–801 to § 23–1091, and therefore was precluded from suing Goettl for his injuries. *See* A.R.S. § 23–906.A. Cunningham and his wife (the Cunninghams) also filed a third party action against WSI (the tort action). *See* A.R.S. § 23–1023.A.

¶ 3 Relying on the indemnity clause in its lease agreement with Goettl,[1] WSI tendered

---

1. The indemnity clause states, in pertinent part: Lessor [WSI] shall not be liable to Lessee [Goettl] or any other person ... for any injury ... resulting from the condition of, or any defect in, the Premises. Lessee hereby agrees to indemnify and hold Lessor harmless from and defend Lessor against any and all claims, liabilities, penalties, costs, expenses (including attorneys' fees), demands, and causes of action arising out or in connection with ... any accident ... in or about Premises, when such injury ... shall be caused in part or in whole by the act, neglect, fault of or omission of any duty with respect to the same by Lessee, its agents, representatives, employees, guests, contractors, or invitees ... [or] the condition of, or any defect in, the Premises or any part thereof or any improvements thereon [or] the condition of, or any defect in, Lessee's fixtures or equipment or any part thereof [or] the use or occupancy of the Premises by Lessee or any invitee or licensee of Lessee ... or ... any act

the defense of the tort action to Goettl. Goettl refused to assume or participate in WSI's defense, even after WSI informed Goettl of impending settlement negotiations with the Cunninghams. After two years of litigation and on the eve of trial, WSI and the Cunninghams agreed to settle the tort action.

¶ 4 The WSI–Cunningham settlement agreement involved a series of documents. The parties first executed a document entitled "Settlement Agreement and Release," which the Cunninghams signed on November 16, 1992, their attorney signed on November 20, 1992, and counsel for WSI signed on December 3, 1992. The terms of the release agreement specified that the Cunninghams agreed to "completely release and forever discharge" WSI from any claims arising from the acts or omissions alleged in the WSI–Cunningham lawsuit. In exchange, WSI assigned to the Cunninghams all its rights against Goettl under the indemnity clause of the WSI–Goettl lease agreement. The release agreement included a graduated payback provision. WSI agreed to pay the Cunninghams $90,000 upon execution of the agreement, which the Cunninghams would repay, in part or in full, if they obtained a judgment against Goettl in excess of $99,999.99. Under the graduated payback provision, WSI would recover the full $90,000 it paid the Cunninghams if the Cunninghams obtained a judgment against Goettl of $250,000 or more, and WSI would never owe the Cunninghams more than the $90,000 already paid.

¶ 5 On December 3, 1992, the parties' attorneys executed a second settlement document entitled "Agreement for Stipulation of Judgment/Covenant Not to Execute and Assignment." Under the terms of this agreement, WSI stipulated to judgment against it in the amount of $250,000. In exchange, the Cunninghams agreed not to execute the judgment against WSI's assets or to record the judgment in any state.

¶ 6 Also on December 3, 1992, WSI and the Cunninghams submitted to the trial court the two settlement documents, a stipulation for dismissal with prejudice, an order dismissing the action with prejudice, and a form of judgment in the amount of $250,000. The trial judge signed the dismissal order on December 17, 1992, but did not sign the judgment until January 4, 1993. The clerk entered the judgment on January 4, 1993 and the dismissal order on January 6, 1993, in reverse order of their signing by the judge.

¶ 7 The Cunninghams, as WSI's assignees under the indemnity clause of the WSI–Goettl lease agreement, then sued Goettl to recover the $250,000 consent judgment (the indemnity action). The parties first filed cross-motions for summary judgment on the issue of liability. The trial court found that Goettl was a party to the WSI–Goettl lease agreement[2] and was obligated to indemnify WSI under the terms of the lease. The court alternatively found that, even if WSI had not been a party to the lease with Goettl, WSI, as the passive tortfeasor, had a common law right of indemnity from Goettl, the active tortfeasor. Finally, the trial court concluded that because WSI had assigned its rights under the WSI–Goettl lease agreement to the Cunninghams, Goettl was obligated to pay the Cunninghams an amount to be determined later.

¶ 8 The parties then cross-moved for summary judgment on the issue of damages, stipulating that the trial court could decide the amount of Goettl's liability under its indemnity agreement with WSI as a matter of law. In their motion for summary judgment, the Cunninghams argued that section 57 of the Restatement (Second) of Judgments required that Goettl pay $250,000, the amount of the stipulated judgment. The Cunninghams also argued that the agreement between WSI and the Cunninghams was simply a permissible *Damron*[3] settlement agree-

---

or negligence of Lessee, or any of its agents, representatives, employees, invitees, guests or contractors.

**2.** Goettl initially contended that it did not enter a lease with WSI. On appeal, Goettl did not challenge the trial court's resolution of that issue.

**3.** *Damron v. Sledge,* 105 Ariz. 151, 460 P.2d 997 (1969).

ment that was neither collusive nor fraudulent.

¶ 9  In its cross-motion for summary judgment, Goettl argued that the Cunninghams could not enforce the judgment in the underlying tort suit because the judgment resulted from fraud and collusion, as evidenced by the fact that WSI's obligation to the Cunninghams was only $90,000, not $250,000. Goettl also argued that section 57 of the Restatement (Second) of Judgments limits an indemnitor's obligation to the indemnitee's liability to the injured plaintiff, in this case $90,000. Finally, Goettl argued that *Damron* did not apply, and that Goettl was only required to indemnify WSI for its actual out-of-pocket loss, because WSI's claim against Goettl was for breach of contract and not bad faith.

¶ 10  The trial court agreed with the Cunninghams, found that the record contained no evidence of fraud, and granted the Cunninghams' motion for summary judgment. Relying on the *Damron* line of cases, the trial court held that because Goettl presented no evidence of fraud or collusion regarding the amount of damages and WSI tendered its defense of the Cunningham lawsuit to Goettl, thus giving Goettl notice of the cause of action, the indemnity clause in the lease agreement required Goettl to indemnify WSI in the amount of the $250,000 stipulated judgment.

¶ 11  Goettl next filed a motion for relief from the judgment under Rule 60(c), Arizona Rules of Civil Procedure. Goettl argued that the underlying $250,000 consent judgment was void because it was entered after the judge in the tort action had signed the order dismissing the Cunninghams' suit against WSI with prejudice. WSI and the Cunninghams then filed affidavits with the trial judge in the tort action, describing Goettl's argument in the Rule 60(c) motion, and asked for correction of the record. The trial judge entered an order on November 28, 1995, correcting, nunc pro tunc, the date of the dismissal order in the tort action to January 6, 1993. As a result, the stipulated judgment

and the order dismissing the tort action with prejudice now bear the same date.

¶ 12  The trial court in the indemnity action, given this nunc pro tunc order, denied Goettl's Rule 60(c) motion, held that Goettl was obligated to indemnify WSI in the amount of the stipulated judgment, and awarded the Cunninghams attorneys' fees, costs, and pre-judgment interest.[4]

¶ 13  The court of appeals reversed the trial court's grant of summary judgment to the Cunninghams on the indemnity issue. The court of appeals found material issues of fact remained as to whether Goettl or WSI was actively negligent and whether the WSI–Cunningham settlement resulted from fraud or collusion. For the reasons that follow, we vacate the court of appeals' opinion. We reinstate summary judgment on the indemnity issue in favor of the Cunninghams, but revise the amount of the judgment to $90,-000. We remand this action to the court of appeals to consider the attorneys' fees and interest issues raised but not resolved on appeal.

## II.

¶ 14  Before the trial court and on appeal, the parties relied upon both section 57 of the Restatement (Second) of Judgments and *Damron* and its progeny to determine whether the stipulated judgment against WSI binds Goettl. This court has never addressed directly the issue presented. In the absence of statutory and case authority that directly speaks to an issue, Arizona courts look to the Restatement for guidance. *See, e.g., Jesik v. Maricopa County Com. College Dist.*, 125 Ariz. 543, 546, 611 P.2d 547, 550 (1980). Because section 57 of the Restatement directly addresses the issue before us, we look to the Restatement to determine the effect on Goettl of the judgment against WSI, its indemnitee.

## A.

¶ 15  Goettl first argues that its agreement with WSI is a general indemnity

---

4. The court awarded the Cunninghams $30,000 for fees WSI incurred in the tort action, payable to the Cunninghams under their agreement with WSI, and $100,000 for attorneys' fees they incurred in prosecuting the indemnity action.

agreement that can impose no obligation to indemnify WSI if WSI was actively negligent. When language in an indemnity agreement does not specifically discuss what effect the indemnitee's negligence has upon the obligation to indemnify, the agreement generally is considered a general indemnity agreement. *See Washington Elem. Sch. Dist. v. Baglino Corp.*, 169 Ariz. 58, 61, 817 P.2d 3, 6 (1991). Under such an agreement, the general rule is that an indemnitee is entitled to indemnification for a loss that results in part from an indemnitee's passive negligence, but not for a loss that results from an indemnitee's active negligence. *See id.*

¶ 16 Although we ordinarily follow the general rule, "a mechanical application of it should be avoided in determining the parties' intent" because "[r]elying exclusively on the active/passive distinction . . . may prevent an agreement from being enforced as the parties intended." *Id.* Instead, we look to "the all-encompassing language" of the indemnification contract. *Id.* If the language of an indemnity agreement "clearly and unequivocally indicates that one party is to be indemnified, regardless of whether or not that injury was caused in part by that party, indemnification is required notwithstanding the indemnitee's active negligence." *Id.* at 62, 817 P.2d 3.

¶ 17 The indemnity clause of the WSI–Goettl lease agreement required Goettl to "indemnify and hold Lessor [WSI] harmless . . . against any and all claims . . . [and] expenses (including attorneys' fees) . . . arising [from] . . . any accident or other occurrence in or about Premises, when such injury . . . shall be caused in part or in whole by . . . the act, neglect, fault of or omission of any duty . . . or negligence of Lessee [Goettl] . . . ."

¶ 18 Analyzing the broad language of the indemnity agreement here in light of our holding in *Baglino*, we conclude as a matter of law that Goettl is required to indemnify WSI, even if WSI was an actively negligent party. The WSI–Goettl indemnity agreement does not address the conduct of WSI, whether active or passive. Instead, the agreement focuses exclusively upon Goettl's actions. The agreement clearly and unequivocally requires Goettl to indemnify WSI for injuries or damage caused in whole *or in part* by Goettl. The Cunninghams' allegations in the tort action brought their action within the broad terms of the indemnity agreement. We therefore agree with the trial court that the indemnity clause of the WSI–Goettl lease agreement creates an obligation on the part of Goettl to indemnify WSI.

### B.

¶ 19 Section 57 of the Restatement (Second) of Judgments applies when an indemnity obligation exists and judgment has been entered against the indemnitee. To determine the effect of the judgment on the indemnitor, we first determine whether the indemnitor received "reasonable notice of the action and an opportunity to assume or participate in its defense," and whether, if the indemnitor did not participate, "the indemnitee defended the action with due diligence and reasonable prudence." If so, "[t]he indemnitor is estopped from disputing the existence and extent of the indemnitee's liability to the injured person" and "[t]he indemnitor is precluded from relitigating issues determined in the action against the indemnitee." RESTATEMENT (SECOND) OF JUDGMENTS § 57(1) (1982).[5]

¶ 20 Applying section 57(1) to these facts, we first consider whether WSI gave Goettl reasonable notice of the action and an

---

**5.** Goettl argues that we should apply subsection 2 of section 57 because a conflict of interest existed between it and WSI. The "conflict" on which Goettl relies resulted because, Goettl argues, the settlement agreement gave WSI incentive to inflate the damages so it could recover the amounts it paid to the Cunninghams. That conflict, however, arose long after Goettl refused to assume WSI's defense, and could not have impacted Goettl's decision that it could not properly assume the defense of WSI, as section 57(2) requires. Goettl never argued that the facts of this case resulted in any other conflict of interest sufficient to make subsection 2 applicable. We therefore do not consider whether, under similar facts, an indemnitor could assert that subsection 2 should apply.

opportunity to assume or participate in its defense. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 57(1). The record reveals that counsel for WSI sent a letter to Goettl's insurance carrier on February 14, 1991, attaching a copy of Cunningham's complaint and WSI's answer, asserting that Goettl's insurer provided coverage for the claim, and asking that it "accept this letter as a tender of the defense of" WSI. A claims representative for Goettl's insurer responded in writing on June 12, 1991, and stated: "My review of the documentation submitted [including the lease agreement] thus far does not indicate that [we] should accept the tender of defense on behalf of" WSI. On August 27, 1991, counsel for WSI again unsuccessfully attempted to tender its defense to Goettl's insurer. Counsel for WSI also tendered the defense of the Cunningham litigation in writing directly to Goettl on November 6, 1991, but to no avail. On July 21, 1992, WSI informed Goettl in writing of the impending settlement of the Cunningham action and made one final unsuccessful attempt to tender its defense to Goettl. Based on this documentation, Goettl cannot credibly claim that it did not have notice of Cunningham's action or an opportunity to assume or participate in WSI's defense.

■ ¶ 21    Next, we look to whether WSI defended the Cunninghams' action with reasonable diligence and prudence. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 57(1). Factors indicating that a defendant-indemnitee failed to defend an action with due diligence and prudence include the swift resolution of a complex action, a lack of discovery, and the failure to interview witnesses. *See Falcon v. Beverly Hills Mortgage Corp.*, 168 Ariz. 527, 530, 815 P.2d 896, 899 (1991). Applying these factors here, we conclude that WSI defended itself with reasonable diligence on the issue of liability. The WSI–Cunningham litigation lasted for two years, and settled only on the eve of trial. During the litigation, WSI conducted discovery, including taking depositions, hiring experts, inspecting the property, subpoenaing documents, analyzing medical records, and arranging for surveillance of Cunningham.

■ ¶ 22    When the indemnitee settles an action, his obligation to defend with reasonable diligence and prudence also extends to the amount of the settlement. Whether it did so can, in some circumstances, present questions of fact. We need not consider whether this record supports a conclusion that the $250,000 judgment is a reasonable amount for two reasons. First, Goettl agreed that the trial judge should decide the issue of damages as a matter of law. Second, Goettl has never argued that the $90,000 paid by WSI under the release agreement is an unreasonable settlement amount. Goettl argues only that the $250,000 consent judgment is void, and for the reasons discussed below, we conclude that Goettl's liability is limited to $90,000.

### C.

¶ 23    The remaining question is the extent of Goettl's liability to WSI under the indemnity clause, namely whether Goettl is liable for the $250,000 stipulated judgment contained in the WSI–Cunningham "Agreement for Stipulation of Judgment/Covenant Not to Execute and Assignment" or for the $90,000 WSI paid out-of-pocket to Cunningham under the terms of the WSI–Cunningham "Settlement Agreement and Release."

¶ 24    The two documents comprising the WSI–Cunningham settlement, as their titles illustrate, potentially conflict. Pursuant to the "Settlement Agreement and Release," the Cunninghams agreed to "completely release and forever discharge" WSI and its insurer from any claims arising from the alleged acts and omissions in the WSI–Cunnigham lawsuit. On the other hand, the "Agreement for Stipulation of Judgment/Covenant Not to Execute and Assignment" required only that the Cunninghams agree never to proceed against WSI's assets to satisfy the stipulated judgment.

■ ¶ 25    When a party executes a release agreement, he or she abandons "a claim or right to the person against whom the claim exists or the right is to be enforced or exercised." 66 AM.JUR.2D Release § 1, at 678 (1973). The claim, once abandoned, is extinguished. The release agreement between the Cunninghams and WSI, in terms typical

of such agreements, "release[d] and forever discharge[d] Defendant ... from any and all claims, demands, obligations, actions, causes of actions, rights, damages, costs, losses of services, expenses, and compensation of any nature ... arising out of the alleged acts or omissions in the Present Lawsuit." A covenant not to execute, in contrast, "does not extinguish the plaintiff's cause of action and does not operate to release other joint tortfeasors." *Rager v. Superior Coach Sales and Serv. of Arizona*, 110 Ariz. 188, 191, 516 P.2d 324, 327 (1973). *See also Fagerberg v. Phoenix Flour Mills Co.*, 50 Ariz. 227, 233–36, 71 P.2d 1022, 1025–26 (1937). Once the Cunninghams unconditionally released WSI from all claims, WSI's liability to the Cunninghams was determined. The covenant not to execute, whether signed before or after the release, could not operate to reinstate a claim that the Cunninghams had released. The liability of WSI to the Cunninghams, as a result of the release agreement, became limited to $90,000, the consideration paid by WSI in return for the release.

¶ 26 The responsibility of Goettl under the indemnity agreement is to "indemnify and hold harmless [WSI] from ... all claims, liabilities, ... and causes of action" covered by the terms of the agreement. Goettl is responsible to indemnify WSI for the liability it incurred as a result of the injury to Mr. Cunningham. The terms of the agreement, however, do not obligate Goettl to make payments beyond that amount.

¶ 27 No valid public policy would be served by allowing WSI and the Cunninghams to deflect liability upon Goettl for an amount greater than WSI's liability. The language of the WSI–Goettl indemnity agreement, not the consent judgment, determines the extent of Goettl's liability to its indemnitee. We therefore hold that Goettl's liability under the indemnity clause in the WSI–Goettl lease agreement is limited to $90,000, plus expenses and attorneys' fees incurred.

### D.

¶ 28 Because Goettl had reasonable notice of the action and an opportunity to assume or participate in WSI's defense, and WSI defended the action with due diligence and reasonable prudence, Goettl is now barred from disputing the existence and extent of WSI's liability to Cunningham and from relitigating issues decided in the WSI–Cunningham litigation. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 57(1). Goettl must indemnify WSI's assignee, the Cunninghams, the amount of actual liability incurred by WSI.

### III.

¶ 29 For the foregoing reasons, we vacate the opinion of the court of appeals, remand to the court of appeals for a determination of the attorneys' fees and interest issues raised on appeal, and reinstate summary judgment in favor of the Cunninghams in the amount of $90,000.

CONCURRING: THOMAS A. ZLAKET, Chief Justice, CHARLES E. JONES, Vice Chief Justice, STANLEY G. FELDMAN, Justice, and FREDERICK J. MARTONE, Justice.