RIVERBEND COMMUNITY, LLC, a Delaware limited liability company, and Fox Chase Realty, LLC, Plaintiffs Below, Appellants,

v.

GREEN STONE ENGINEERING, LLC, a Delaware limited liability company and Bruce Jones, Defendants Below, Appellees.

No. 236, 2012.

Supreme Court of Delaware.

Submitted: Sept. 26, 2012.
Decided: Oct. 17, 2012.

Adam Balick (argued) and Melony Anderson, Balick & Balick, LLC, Wilmington, Delaware, for appellants.

Paul Cottrell and Patrick McGrory (argued), Tighe & Cottrell, P.A., Wilmington, Delaware, for appellees.

Before STEELE, Chief Justice, HOLLAND and RIDGELY, Justices.

STEELE, Chief Justice:

A subdivision developer signed a release with an engineering company after the completion of design services. We interpret the release as a general release. We do not address the application of the economic loss doctrine. Because we find the release is a general release that unambiguously waives all claims, we **AFFIRM** the grant of summary judgment below on both the tort and contract claims.

## I. FACTUAL AND PROCEDURAL HISTORY

Riverbend Community, LLC and Parkway Gravel, Inc. jointly owned a parcel of land (the Property), which they intended to develop into residential real estate. In 2004, the previous owner obtained a jurisdictional delineation (JD) from the U.S. Army Corps of Engineers, which identified the federal wetlands on the Property. The 2004 JD depicted the wetlands running across the Causeway, an "elevated section of roadway on the eastern border of the Property [that] provides exclusive access from Route 9 to the Property."[1]

Before purchasing the Property, Riverbend[2] and Green Stone Engineering, LLC signed the August 2005 Contract, which required Green Stone to perform four tasks: (1) Site Evaluation and Regulatory Review, (2) Wetlands Restoration Conceptual Design, (3) Wetland Enhancement Conceptual Layout, and (4) Regulatory Meetings and Presentation.[3] In March 2006, the parties signed a second contract, the March 2006 Contract, which required Green Stone to provide design services for the site and roadways, the stormwater collection and conveyance systems, the sanitary sewer system, the water supply piping system, the stormwater management plans, the sediment and erosion control plans, and the landscape plans.[4]

Pursuant to these contracts, Green Stone subcontracted with JCM Environmental, Inc. to flag additional federal waters and wetlands on the Property. Green Stone also prepared and submitted plans to various city and county agencies that depicted wetland areas north and south of the Causeway. Unfortunately, the plans did not indicate that the wetlands were connected and that any construction on the Causeway might interfere with protected

---

1. Opening Br. 8.

2. Fox Chase Realty, LLC initially contracted with Green Stone because Riverbend was not yet formed; Joseph L. Capano majority-owns both entities. Opening Br. 5. For simplicity,

we will refer to all actions taken by either entity as those of Riverbend.

3. App. to Opening Br. A009–10.

4. *Id.* at A014–15.

wetlands. Relying on Green Stone's depictions, Riverbend proceeded to move earth and grade roadways along the Causeway.

Green Stone left the project in late 2007. Riverbend hired a new engineering firm to complete the work, but the new firm needed Green Stone's work product. Green Stone would not release its work product unless Joseph Capano, on behalf of Riverbend, executed a release. The Release is entitled "Receipt and General Release." In pertinent part it reads:

> Fox Chase Realty, LLC ("FCR") for and in consideration of the sum of Ten Dollars ($10.00) and for other good and valuable consideration, the receipt of which is hereby acknowledged, for itself and its successors, and assigns hereby remises, release[s], acquits, and forever discharges **Green Stone Engineering, LLC** and its respective agents, officers, employees, representatives, successors and assigns and any and all other persons, associations, and/or corporations, whether herein referred to or not, ("Releasees"), of and from all known or unknown, suspected or unsuspected, past, present, and future claims, demands[,] damages, interest, penalties, legal fees and all other actions, third-party actions, causes of action, or suites [sic] at law or in equity, including claims for contribution and/or indemnity or/of [sic] whatever nature, for or because of any matter or thing done, omitted, or suffered to be done, on account of or arising from Green Stone's use or reliance upon any plans, engineering calculations, drawings, specifications, surveys or any other work product of any nature whatsoever

produced by **Green Stone Engineering[,] LLC** in connection with professional engineering services provided **Fox Chase Realty, LLC for the Riverbend at Old New Castle project** ("the Work Product"). This document further confirms FCR's receipt of all Work Product produced [by] **Green Stone Engineering, LLC** on behalf of **Joseph L. Capano, Sr. and FCR.**

> This release is made with advice of counsel or after knowingly declining advice of counsel.[5]

Capano claims to have signed the Release because he thought it was a "typical work product release, which released claims related to electronic transmission of the work product," not a general release, and because it was the only way to obtain Green Stone's work product, which was necessary for further construction.[6]

In 2009, the U.S. Army Corps of Engineers issued two Cease and Desist Letters against Riverbend because of the work in the wetlands. Meanwhile, the Delaware Department of Natural Resources and Environmental Control has filed a complaint against Riverbend as well. As a result of the federal and state issues, Riverbend could not sell houses, and its lender foreclosed on and purchased the Property at a sheriff's sale in April 2012.

On July 7, 2010, Riverbend sued Green Stone for breach of contract, professional negligence, and simple negligence. Green Stone moved for summary judgment on the grounds that the economic loss doctrine barred the tort claims and the general release barred all claims.[7] The trial judge granted the motion, and Riverbend has appealed.

---

5. *Id.* at A021.

6. Opening Br. 9.

7. There is some ambiguity regarding whether Green Stone argued that the Release should apply to all claims, both those based in tort and those based in contract. However, in the Motion for Summary Judgment, Green Stone stated under the "Facts" section that "Fox Chase signed a general release releasing Green Stone from *all liability arising from the Property.*" Def.'s Mot. Summ. J. ¶ 8 (empha-

## II. STANDARD OF REVIEW

■ We review contract interpretation *de novo.*[8] We review the trial judge's grant of summary judgment *de novo* as well, " 'to determine whether, viewing the facts in the light most favorable to the nonmoving party, the moving party has demonstrated that there are no material issues of fact in dispute and that the moving party is entitled to judgment as a matter of law.' " [9] We may affirm a grant of summary judgment on grounds other than those on which the trial judge relied.[10]

## III. ANALYSIS

### A. Is the Release ambiguous?

■ We have "long upheld awards of summary judgment in contract disputes where the language at issue is clear and unambiguous." [11] "[W]here reasonable minds could differ as to the contract's meaning," however, "a factual dispute results and the fact-finder must consider admissible extrinsic evidence," making summary judgment improper.[12] Thus, the first step in the analysis requires us to decide whether the language of the Release is ambiguous.

■ When we interpret contracts, we "give priority to the parties' intentions as reflected in the four corners of the agreement." [13] We "must construe the agreement as a whole, giving effect to all provisions therein." [14] "The meaning inferred from a particular provision cannot control the meaning of the entire agreement if such an inference conflicts with the agree-

sis added). Furthermore, the trial judge found that Riverbend's "negligence claims are barred by the economic loss doctrine" and "further" found that the "breach of contract claim must be dismissed because [Riverbend] executed a *general release exculpating* [*Green Stone*] *from any liability."* *Riverbend Cmty., LLC v. Green Stone Eng'g, LLC,* 2012 WL 1409013, at *1 (Del.Super. Apr. 4, 2012) (emphasis added). Thus, we think the argument that the Release could operate to bar all of the claims was fairly presented to the trial judge when the parties asked her to interpret the Release. Supr. Ct. R. 8. While the trial judge considered the application of the economic loss doctrine before considering the Release, we are not obligated to do the same when reviewing the grant of summary judgment *de novo. See Unitrin, Inc. v. Am. Gen. Corp.,* 651 A.2d 1361, 1390 (Del.1995) (We "may affirm on the basis of a different rationale that that which was articulated by the trial court. We also recognize that [we] may rule on an issue fairly presented to the trial court, even if it was not addressed by the trial court." (citing *Standard Distrib. Co. v. Nally,* 630 A.2d 640, 647 (Del.1993))).

8. *GMG Capital Invs., LLC v. Athenian Venture Partners I, L.P.,* 36 A.3d 776, 779 (Del.2012) (citing *Paul v. Deloitte & Touche, LLP,* 974 A.2d 140, 145 (Del.2009)).

9. *Id.* (quoting *State Farm Mut. Auto. Ins. Co. v. Patterson,* 7 A.3d 454, 456 (Del.2010)).

10. *Windom v. Ungerer,* 903 A.2d 276, 281 n. 18 (Del.2006) (citing *Unitrin,* 651 A.2d at 1390).

11. *GMG Capital,* 36 A.3d at 783 (citing *Greggo v. Wohl,* 241 A.2d 522, 523 (Del.1968) (affirming summary judgment where relevant provisions were unambiguous and thus parol evidence unnecessary); *Novellino v. Life Ins. Co. of N. Am.,* 216 A.2d 420, 423 (Del.1966) (affirming summary judgment where contract language was plain on its face); *W. Natural Gas Co. v. Cities Serv. Gas Co.,* 223 A.2d 379, 383–84 (Del.1966) (affirming summary judgment after finding the contract had only one reasonable meaning)).

12. *Id.* (citing *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.,* 702 A.2d 1228, 1232 (Del. 1997)).

13. *Id.* at 779 (citing *Paul v. Deloitte & Touche, LLP,* 974 A.2d 140, 145 (Del.2009)).

14. *E.I. du Pont de Nemours & Co. v. Shell Oil Co.,* 498 A.2d 1108, 1113 (Del.1985) (citations omitted).

ment's overall scheme or plan."[15] We "interpret clear and unambiguous terms according to their ordinary meaning."[16]

■ The trial judge held that the release is unambiguous. To her, it "clearly states" that Riverbend " 'remise[s], release[s], acquits, and forever discharges' " Green Stone "from *all* claims in connection with services provided for the Old New Castle Subdivision."[17] She found that the "only logical reading of the Release is that the parties intended to release all potential claims."[18]

Riverbend, in contrast, argues the following:

> Instead, the Release clearly states that Green Stone is released from claims
>
> > for or because of any matter or thing done, omitted, or suffered to be done, *on account of or arising from Green Stone's use or reliance* upon any plans, engineering calculations, drawings, specifications, surveys or any other work product of any nature whatsoever produced by Green Stone in connection with professional engineering services provide[d] Fox Chase for the Riverbend at Old New Castle project ("the Work Product").
>
> (A021) (emphasis added). As written, the Release applies to claims that result from *Green Stone's* use of the Work Product. It does not apply to [Riverbend's] (or anyone else's) reliance on Green Stone's work.[19]

Considering the Release as a whole, we hold that the Release is unambiguously a general release. It is entitled "Receipt and General Release." Reasonable minds cannot differ over the Release's meaning. The Release unambiguously "remises, release[s], acquits, and forever discharges" Green Stone "of and from all known or unknown, suspected or unsuspected, past, present, and future claims . . . and all other actions, third-party actions, causes of action, or suites [sic] at law or in equity." The Release then specifically identifies the claims encompassed as "including," but not limited to, "claims for contribution and/or indemnity . . . , for or because of any matter or thing done . . . on account of or arising from Green Stone's use or reliance" on Green Stone's work product. The only reasonable reading of the Release is that it bars all claims by Riverbend against Green Stone arising out of Green Stone's provision of engineering services for the Riverbend at Old New Castle project, including claims that would, according to the parties, traditionally be handled in a separate release governing errors in electronic transmission.

Riverbend's reading of the Release is unreasonable. Riverbend's preferred construction would require "for or from Green Stone's use or reliance" to modify "all known or unknown . . . claims." Reading the language of the Release as Riverbend suggests would cause one provision to control the meaning of the entire agreement, in conflict with the overall scheme of the Release as a very expansive release of all known or unknown claims. Riverbend's analysis reads out the word "including." "[F]or or because of . . . any matter . . . arising from Green Stone's use or reli-

**15.** *GMG Capital,* 36 A.3d at 779 (citing *Shell Oil,* 498 A.2d at 1113).

**16.** *Id.* at 780 (citations omitted).

**17.** *Riverbend Cmty., LLC v. Green Stone Eng'g, LLC,* 2012 WL 1409013, at *6 (Del.Super. Apr. 4, 2012).

**18.** *Id.*

**19.** Opening Br. 17.

ance" on its work product modifies "claims for contribution and/or indemnity," which is listed as one particular type of suit *included* in the expansive recitation of all known or unknown claims. We hold the only reasonable reading of the Release is as a general release that waives all known or unknown claims against Green Stone.

## B. Does the Release apply to all of the claims, contractual and tort based?

Under Delaware law, general releases are common and their validity is unchallenged.[20] " 'In construing a release, the intent of the parties as to its scope and effect are controlling, and the court will attempt to ascertain their intent from the overall language of the document.' " [21] We hold above that the Release unambiguously operates as a general release "of and from all known or unknown, suspected or unsuspected, past, present, and future claims, demands[,] damages, interest, penalties, legal fees and all other actions, third-party actions, causes of action, or suites [sic] at law or in equity."

At oral argument, counsel for Riverbend argued that the Release could not operate as a waiver of the negligence claims because it was not sufficiently specific.[22] Counsel relied on three cases: *Slowe v. Pike Creek Court Club, Inc.*, 2008 WL 5115035 (Del.Super. Dec. 4, 2008), *J.A. Jones Construction Co. v. City of Dover*, 372 A.2d 540 (Del.Super.1977), and *Warburton v. Phoenix Steel Corp.*, 321 A.2d 345 (Del.Super.1974).[23] These cases are distinguishable because they refer to releases of prospective negligence.[24] It is still the law in Delaware that a contract provision waiving prospective negligence "must be crystal clear and unequivocal" to insulate a party from liability for possible future negligence.[25] Similarly, "if one party is to be held to release a claim for fraud in the execution of the release itself, the release should include a specific statement of exculpatory language referencing the fraud." [26]

In contrast, however, we find "merit to the contention that parties entering into a general release are chargeable with notice that any uncertainty with respect to the

---

**20.** *Corporate Prop. Assocs. 6 v. Hallwood Grp. Inc.*, 817 A.2d 777, 779 (Del.2003) (citing *Hob Tea Room v. Miller*, 89 A.2d 851, 856 (Del. 1952)).

**21.** *Id.* (quoting *Adams v. Jankouskas*, 452 A.2d 148, 156 (Del.1982)).

**22.** Oral Argument at 1:20, *Riverbend Cmty., LLC v. Green Stone Eng'g, LLC*, No. 236, 2012 (Del. Sept. 26, 2012), *available at* http://courts.delaware.gov/supreme/audioargs.stm. Riverbend's counsel also argued that the trial judge's decision should be limited to the impact of the Release of the contract claim. *Id.* at 0:58. We found the issue of whether the Release could operate to bar all claims fairly presented to the trial judge below. *See supra* note 7. The issue was also argued before us; Green Stone's counsel stated at oral argument, "If the release is to be upheld, it also includes the tort claims as well." Oral Argument at 24:31.

**23.** Oral Argument at 2:15.

**24.** *See Slowe*, 2008 WL 5115035, at *1 (interpreting a liability waiver signed in order to receive a guest pass to a health club); *J. A. Jones*, 372 A.2d at 545 (interpreting a contract clause that " 'no extra compensation will be due this contractor if these dates are not met' "); *Warburton*, 321 A.2d at 346 (interpreting an indemnification provision in a contract for improvements to a steel plant). This is in contrast to the Release in this case, which was signed after the work was completed.

**25.** *State v. Interstate Amiesite Corp.*, 297 A.2d 41, 44 (Del.1972).

**26.** *E.I. DuPont de Nemours & Co. v. Fla. Evergreen Foliage*, 744 A.2d 457, 461 (Del.1999).

contours of the dispute ... is resolved through the release."[27] Because we hold that the Release unambiguously operates as a general release "of and from all known or unknown ... claims ... and all other ... causes of action, or suites [sic] at law or in equity," we hold that the Release operates as a bar to Riverbend's tort and contract claims. Because we hold the Release bars the tort claims, we do not reach the question of whether application of the economic loss doctrine would bar the claims.

## IV. CONCLUSION

We **AFFIRM** the grant of summary judgment on the ground that the Release operates as a general release that bars both the tort and contract claims.

**27.** *Id.* at 460–61 (citing *Hob Tea Room v. Miller,* 89 A.2d 851, 856 (Del.1952) (construing the effect of a general release that the Court characterized as "unmistakably lucid")).