**COURT OF CHANCERY
OF THE
STATE OF DELAWARE**

PATRICIA W. GRIFFIN
MASTER IN CHANCERY

CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DE 19947

Final Report: December 27, 2018
Date Submitted: September 14, 2018

Seth A. Niederman, Esquire
Fox Rothschild LLP
Citizens Bank Center
North Market Street, Suite 300
Wilmington, DE 19899-2323

Seth J. Reidenberg, Esquire
Tybout, Redfearn & Pell
750 Shipyard Drive, Suite 400
P.O. Box 2092
Wilmington, DE 19899-2092

RE: ***U.S. Bank National Association, as Trustee for Chevy Chase Funding, LLC
Mortgage Backed Certificates Series 2007-2 v. Lynn A. McColley et al.,***
C.A. No. 2017-0014-PWG

Dear Counsel:

Pending before me is a motion for summary judgment by the mortgagee's
assignee seeking reformation of a mortgage or, alternatively, equitable subrogation
or an equitable lien on the property, based upon the mutual mistake of the parties to
the mortgage concerning the identity of the owners of the property securing the
mortgage. The mortgage was executed by the mortgagors individually and not in
their capacity as trustees of their trusts which actually owned the property.
Mortgagors oppose summary judgment, claiming that mortgagee's assignee has not
shown mutual mistake to support the reformation of the mortgage, the elements for
equitable subrogation, or established an equitable lien. Based upon the reasons set
forth below, I recommend that the Court grant the motion for summary judgment

reforming the mortgage to reflect that the current owners of the property, the trustees of the trusts, are parties to the mortgage. This is a final report.

## I. Background

In February of 2002, Defendants Lynn A. McColley ("Lynn") and Karen Kimmell McColley ("Karen"), husband and wife, acquired title to real property located at 416 NE 10th Street, Milford, Delaware (the "Property").[1] In June of 2002, Lynn and Karen executed a deed conveying title to the Property to their trusts, Lynn A. McColley Revocable Trust and Karen Kimmell McColley Revocable Trust (collectively, the "Trusts").[2] On or about November 9, 2003, the Trusts re-conveyed title to the Property to Lynn and Karen individually and Lynn and Karen executed a $3,000,000 mortgage on the Property with County Bank, in their names individually in connection with a refinancing transaction.[3] On November 10, 2003, Lynn and Karen executed a deed conveying title to the Property back to the Trusts.[4] The mortgage and deed transfers were all recorded on November 26, 2003. Lynn and Karen executed a second County Bank mortgage for $385,000 on June 4, 2004 in

---

[1] Docket Item ("D.I.") 14, at 3. I use first names in pursuit of clarity and intend no familiarity or disrespect.

[2] *Id.*, at 3-4. Lynn and Karen indicate they transferred the Property into their trusts for estate purposes. *Id.*, Ex. A, Lynn Dep. Tr. 45: 15- 46: 13.

[3] *Id.*, at 4.

[4] *Id.*

their individual capacities and not as trustees of the Trusts.[5] On April 9, 2007, Lynn and Karen refinanced the two County Bank mortgages through a $3,250,000 loan obtained from Chevy Chase Bank, F.S.B. ("Chevy Chase"), and executed a mortgage on the Property securing the loan with Chevy Chase ("Mortgage") in their names individually and not as trustees of the Trusts.[6] Proceeds from that Chevy Chase loan were used to satisfy the County Bank mortgages.[7] Lynn and Karen also executed another mortgage on the Property with All Credit Considered Mortgage, Inc. d/b/a ACC Mortgage, Inc., for $170,000, in their individual capacities, on December 8, 2009.[8]

Plaintiff U.S. Bank National Association, as Trustee for Chevy Chase Funding, LLC Mortgage Backed Certificates Series 2007-2 ("Plaintiff"), is the successor-in-interest to Chevy Chase through assignment. On January 10, 2017, Plaintiff filed a complaint against Defendants Lynn, Karen, and the Trusts seeking to reform the Mortgage to reflect that Lynn and Karen, as trustees of the Trusts, are parties to the Mortgage; or, alternatively, to subrogate Plaintiff to lien positions held by prior mortgagees at the time the Mortgage was executed; or, alternatively, to grant

---

[5] *Id., at 7.*

[6] D.I. 1, Ex. C.

[7] *See* D.I. 1, Ex. B; D.I. 14, Ex. B, Karen Dep. Tr. 66: 20-23.

[8] *Id.*, Ex. D.

Plaintiff an equitable lien on the Property.[9]   Defendants answered, denying

Plaintiff's claims and alleging affirmative defenses.[10]

On July 19, 2018, Plaintiff moved for summary judgment, arguing the

Mortgage should be reformed to reflect that the Trusts are parties to the Mortgage

and it has a valid lien on the Property because all parties were mutually mistaken as

to the owner of the Property at the time the Mortgage was entered into, which is a

material term of the Mortgage, and all parties intended to encumber the Property

with the Mortgage.[11]   In the alternative, Plaintiff claims it is entitled to judgment

subrogating it to lien positions held by prior mortgagees, or it has an equitable lien

on the Property.[12]

Defendants responded, in their August 24, 2018 Answering Brief, that

Plaintiff is not entitled to summary judgment because it has not presented facts to

show that Chevy Chase knew of the mistake in the Mortgage or to satisfy the

elements of equitable subrogation; and an equitable lien is not appropriate since

Plaintiff has an adequate remedy at law through title insurance and contract claims

---

[9] In its complaint, Plaintiff also sought to compel Lynn and Karen as trustees of the Trusts to execute a deed transferring the Property to Lynn and Karen, effective as of the date of the Chevy Chase loan. D.I. 1, at 10.  Plaintiff did not address that claim in its motion for summary judgment and I decline to address that here, since I recommend reformation of the Mortgage.

[10] D.I. 8.

[11] D.I. 14, at 13-15.

[12] *Id.*, at 16-19.

on the note executed by Lynn and Karen individually, and equitable rights do not run to Plaintiff as assignee of Chevy Chase.[13]

In its September 14, 2018 Reply, Plaintiff asserts that mutual mistake has been sufficiently shown, since Lynn and Karen admit they were mistaken as to the identity of the Property's owners and Chevy Chase's misapprehension is apparent from the terms of the Mortgage; the elements of equitable subrogation have been demonstrated and Lynn and Karen will be unjustly enriched if subrogation is not granted; and potential third-party claims are not a substitute for an equitable lien and would not provide Plaintiff with collateral to secure repayment of the loan.[14]

## II.    Analysis

Under Court of Chancery Rule 56, the court grants a motion for summary judgment when "the moving party demonstrates the absence of issues of material fact and that it is entitled to a judgment as a matter of law."[15] Once the moving party has satisfied its burden, it falls on the non-moving party to provide "specific facts

---

[13] D.I. 18, at 4-5, 10-12.

[14] D.I. 22.

[15] *Wagamon v. Dolan*, 2012 WL 1388847, at *2 (Del. Ch. Apr. 20, 2012); *see also Cincinnati Bell Cellular Sys. Co. v. Ameritech Mobile Phone Serv. of Cincinnati, Inc.*, 1996 WL 506906, at *2 (Del. Ch. Sept. 3, 1996), *aff'd*, 692 A.2d 411 (Del. 1997).

showing that there is a genuine issue for trial."[16]  Evidence must be viewed "in the light most favorable to the non-moving party."[17]

The first issue is whether reformation of the Mortgage is appropriate in this case.  Reformation is "appropriate only when the contract does not represent the parties' intent because of fraud, mutual mistake or, in exceptional cases, a unilateral mistake coupled with the other parties' knowing silence."[18]  The party seeking reformation must show, by clear and convincing evidence, that "the parties came to a specific prior understanding that differed materially from the written agreement."[19]  Mutual mistake occurs when "both parties were mistaken as to a material portion of the written agreement," or "when both parties are under substantially the same erroneous belief as to the facts."[20]  The court determines reformation based upon the

---

[16] Ct. Ch. R. 56(e).

[17] *Williams v. Geier*, 671 A.2d 1368, 1388-89 (Del. 1996) (citing *Merrill v. Crothall-American, Inc.,* 606 A.2d 96, 99 (Del. 1992)).

[18] *CC Fin. LLC v. Wireless Properties, LLC*, 2012 WL 4862337, at *6 (Del. Ch. Oct. 1, 2012) (citation omitted).

[19] *Nationwide Emerging Managers, LLC v. Northpointe Holdings, LLC*, 112 A.3d 878, 890-91 (Del. 2015), *as rev.* (Mar. 27, 2015) (citing *Cerberus Int'l, Ltd. v. Apollo Mgmt., L.P.,* 794 A.2d 1141, 1150 (Del. 2002)); *see also Scion Breckenridge Managing Member, LLC v. ASB Allegiance Real Estate Fund*, 68 A.3d 665, 676 (Del. 2013) (reformation "corrects an enforceable agreement's written embodiment to 'reflect the parties' true agreement'") (citation omitted); *Colvocoresses v. W. S. Wasserman Co.*, 333, 28 A.2d 588, 589 (1942) (courts reform "an erroneous instrument [to] express correctly the real agreement between the parties").

[20] *CC Fin. LLC*, 2012 WL 4862337, at *7 (citing *Mehan v. Travelers Ins. Companies*, 1988 WL 62793, at *2 (Del. Ch. June 16, 1988)); *Riverbend Cmty., LLC v. Green Stone Eng'g, LLC*, 2012 WL 1409013, at *7 (Del. Super. Apr. 4, 2012), *aff'd*, 55 A.3d 330 (Del. 2012).

facts as "they existed at the time of the agreement."[21]  At the summary judgement

stage, the party seeking reformation must show the Court that "a rational fact-finder,

reviewing the summary judgment record, could find that the elements of reformation

due to mutual mistake have been established under a clear and convincing

standard."[22]  The clear and convincing standard "has been described as requiring

'evidence which produces in the mind of the trier of fact an abiding conviction that

the truth of [the] factual contentions are 'highly probable.'"[23]

The Mortgage was executed by Lynn and Karen individually and not in their

capacities as trustees for the Trusts, when, at the time the Mortgage was executed,

title to the Property was in the name of the Trusts.  Plaintiff claims that the parties

were mutually mistaken as to a material aspect of the Mortgage – the identity of the

owner of the Property at the time the Mortgage was entered into.  It argues that

Chevy Chase mistakenly believed that Lynn and Karen were the owners based on

the Owners' Affidavit executed by Lynn and Karen on April 4, 2007 as a part of

their application for the Chevy Chase loan, in which they stated they were the

"record titleholders" of the Property and that their Affidavit was made to secure a

---

[21] *Riverbend Cmty., LLC*, 2012 WL 1409013, at *7.

[22] *CC Fin. LLC*, 2012 WL 4862337, at *7.

[23] *In re TIBCO Software Inc. Stockholders Litig.*, 2015 WL 6155894, at *13 (Del. Ch. Oct. 20, 2015) (citation omitted).

loan on the Property.[24]  Lynn and Karen also admitted they were mistaken as to the

ownership of the Property at the time of the Chevy Chase loan, and that they intended

to encumber the Property with the Mortgage by having the current owner execute

the Mortgage.[25]  Defendants argue that Plaintiff has not provided factual evidence,

in the form of deposition testimony or affidavits, to show Chevy Chase had a

mistaken belief as to the owners of the Property when it issued the loan.  I find that

Plaintiff has provided sufficient factual support that Chevy Chase believed Lynn and

Karen were the owners of the Property based upon the language of the Mortgage,

which Chevy Chase drafted, listing Lynn and Karen as borrowers on the Mortgage

and stating:

> BORROWER COVENANTS that Borrower is lawfully seised of the
> estate hereby conveyed and has the right to mortgage, grant and convey
> the Property and that the Property is unencumbered, except for
> encumbrances of record.  Borrower warrants and will defend generally
> the title to the Property against all claims and demands, subject to any
> encumbrances of record.[26]

I find Plaintiff has shown it is highly probable that all of the parties intended to have

the owners of the Property execute the Mortgage and the Mortgage reflected,

contrary to the parties' intention with regard to the agreement, the parties'

---

[24] D.I. 1, Ex. D.

[25] D.I. 14, Ex. B, Karen Dep. Tr. 67: 16 - 68: 13; 71: 2-7; *Id.*, Ex. A, Lynn Dep. Tr. 108: 9-15.

[26] D.I. 1, Ex. C, at 4.

misapprehension that Lynn and Karen owned the Property, instead of the Trusts.[27]

It is appropriate to reform the Mortgage due to the parties' mutual mistake.[28]

### III. Conclusion

For the reasons set forth above, I find that Plaintiff has shown that a rational fact-finder, after reviewing the summary judgment record, could find that the elements of reformation due to mutual mistake have been established under a clear and convincing standard. Accordingly, I recommend that the Court grant Plaintiff's motion for summary judgment and reform the Mortgage to reflect that Lynn A. McColley, as trustee of the Lynn A. McColley Revocable Trust, and Karen Kimmell McColley, as trustee of the Karen Kimmell McColley Revocable Trust, are parties to the Mortgage. Once this report becomes final, Plaintiff shall submit a proposed order entering final judgment in its favor, on notice to Defendants, within ten (10) days.

---

[27] Chevy Chase's actions are not without fault, but its misconduct by failing to know or discover facts about the titleholders as would have been discovered by conducting a title search before making the contract, does not bar Plaintiff's reformation claim, since there is no evidence of bad faith or unfair dealing related to the Mortgage by Chevy Chase. *See generally E.I. DuPont de Nemours & Co. v. Pressman*, 679 A.2d 436, 443 (Del. 1996). And, the ability of Plaintiff to seek redress through claims against third-parties, such as a title insurer, is not a relevant consideration when the elements necessary for contract reformation have been shown.

[28] There is no need to address the subrogation or equitable lien claims since I find that reformation of the Mortgage is appropriate in this instance.

Sincerely yours,

*/s/ Patricia W. Griffin*

Patricia W. Griffin
Master in Chancery