# COURT OF CHANCERY
## OF THE
## STATE OF DELAWARE

PATRICIA W. GRIFFIN
MASTER IN CHANCERY

CHANCERY COURTHOUSE
34 The Circle
GEORGETOWN, DELAWARE 19947

Date Submitted: May 26, 2022
Draft Report: June 22, 2022
Final Report: July 8, 2022

William M. Kelleher, Esquire
Philip A. Giorando, Esquire
Joseph Bosik IV, Esquire
Gordon, Fournias & Mammarella, P.A.
1925 Lovering Avenue
Wilmington, Delaware 19806

Michael A. Weidinger, Esquire
Pinckney Weidinger Urban & Joyce LLC
2 Mill Road, Suite 204
Wilmington, Delaware 19806

RE: *In the Matter of The David and Joan Traitel Family Trust*
C.A. No. 2021-0729-PWG

Dear Counsel:

Pending before me is a petition filed by a corporate trustee seeking instructions from the Court on interpreting language in a trust instrument relating to procedures for determining incompetency under the trust. In this report, I find this Court can exercise jurisdiction over the trust regarding this matter and recommend that the Court grant the petition for instruction and interpret the trust to provide that it is sufficient for determining incompetency under the Trust if the person's regular physician executes a certificate diagnosing incompetency. I also

recommend that the Court award reasonable attorneys' fees, costs and expenses associated with this litigation to be paid from trust funds. This is a final report.

## I. Background

On May 7, 1980, spouses David T. Traitel and Joan G. Traitel ("Trustee" and collectively with David T. Traitel, "Trustors"), entered into a revocable declaration of trust establishing the Trust.[1] The Trust was amended and restated in its entirety on November 18, 2013.[2] The Trust was subsequently amended on May 11, 2017 ("First Amendment").[3] David T. Traitel died on October 31, 2020.[4] Subsequently, Trustee and Petitioner Northern Trust Company of Delaware ("Corporate Trustee") were named as co-trustees of the Trust.[5]

The Trust provides, in relevant part:

"Incompetency" or the state of being "incompetent" as used herein shall be deemed to exist when an individual referred to herein has been declared incompetent by a court of proper jurisdiction, when a conservator of the estate has been appointed for such individual or upon execution of a certificate diagnosing incompetency by three (3)

---

[1] Docket Item ("D.I.") 1, ¶ 1.

[2] *Id.*

[3] *Id.*, ¶ 2. The Trust had also been amended and restated in its entirety on January 9, 2009. D.I. 27, Ex. B.

[4] D.I. 1, ¶ 4.

[5] *Id.*, ¶ 5. Where a trustee position becomes vacant, Trustee and Corporate Trustee serve as co-trustees. *Id.*, Ex. B, art. 4 (article 7.3(a)). If Trustee is unable to act as trustee, Corporate Trustee becomes the sole successor trustee, subject to any appointment made by David T. Traitel. *Id.* There is no evidence that David T. Traitel ever made such an appointment.

physicians licensed to practice in the state of such individual's residence, such physicians to consist of three neuropsychologists …[6] in consultation with Joan Traitel (if Trustor David Traitel's competency is at issue), or with David Traitel (if Trustor Joan Traitel's competency is at issue), or if he is unable or unwilling to make a selection, by the group composed of the adult descendants of the Trustors of all generations who are not themselves incompetent, by majority vote. If the individual whose competency is at issue does not have a "regular" physician, then certificates of three licensed physicians selected as set forth in the preceding sentence shall be required. Any certificate by a licensed physician shall set forth in substance that the individual is unable to provide properly for his or her personal needs for physical health, food, clothing or shelter and/or is substantially unable to manage his or her financial resources or to resist fraud or undue influence. The effective date of such incompetency shall be the earliest of the date of the decree adjudicating the incompetency, the date of the decree appointing the conservator or the date of the physician's certificate(s), as the case may be. In addition to the foregoing neither Trustor shall be determined to be incompetent unless such Trustor is represented by separate legal counsel hired specifically for the purpose of representing such Trustor's interests in connection with the determination. Such legal counsel shall be selected ...[7] by the person designated as such Trustor's agent for health care decisions appointed in his or her most recent advance health care directive or other similar document.[8]

("Provision"). If a Settlor is deemed incompetent under the Provision, Corporate

Trustee is designated as the sole trustee of the Trust.[9]

---

[6] A clause was struck from this section by the First Amendment. *See id.*, Ex. B, art. 3.

[7] A clause was struck from this section by the First Amendment. *See id.*

[8] *Id.*, Ex. A, art. 6.19.

[9] *Id.*, ¶ 5; *id.*, Ex. B, art. 4.

On August 24, 2021, Corporate Trustee filed the Petition, seeking an interpretation of the Provision to determine the meaning of the second sentence of the Provision and the effect of having a "regular" physician, specifically pertaining to Trustee.[10] Corporate Trustee effected service upon Trustee, but she failed to appear in this matter.[11]

On November 3, 2021, I sent a letter to Corporate Trustee with questions about service on some of the other beneficiaries of the Trust and asking whether, given the circumstances in this case, a guardian ad litem may be beneficial to represent the interests of Trustee since she failed to appear.[12] At a January 19, 2022 status conference, I appointed Michael Weidinger ("Guardian ad litem") as guardian ad litem for Trustee, finding that, under the circumstances, it was appropriate to appoint a guardian ad litem in this trust litigation matter.[13] The Guardian ad litem was appointed to "represent [Trustee]'s best interests with respect to the Petition and take the legal position that he determines is in [Trustee]'s best interests."[14]

---

[10] D.I. 1.

[11] D.I. 2; D.I. 6.

[12] D.I. 8.

[13] D.I. 21; D.I. 22; D.I. 23. Although my order appointing the Guardian ad litem was initially filed under seal, the sealed designation was later removed with Corporate Trustee's and the Guardian ad litem's consent. D.I. 24; D.I. 25; *see also* D.I. 26.

[14] D.I. 26.

On April 22, 2022, the Guardian ad litem filed his report, recommending that it was in Trustee's best interests that the Court grant the Petition and adopt Corporate Trustee's interpretation of the Provision.[15]  In response to my May 2, 2022 letter, Corporate Trustee indicated that no additional briefing was necessary.[16]  On May 26, 2022, certain additional beneficiaries of the Trust filed consents to the Petition.[17]

I issued a draft report on May 22, 2022.[18]  No parties took exception to the draft report, but on June 28, 2022, the Corporate Trustee filed an affidavit of fees in response to the draft report.[19]  I adopt my draft report as my final report and will address attorneys' fees separately.

## II.   Analysis

### A. *This Court can Exercise Jurisdiction over the Trust*

Corporate Trustee asks the Court to accept jurisdiction over the Trust.[20]  To determine whether the Court may exercise jurisdiction over a trust, Delaware

---

[15] D.I. 27.

[16] D.I. 30; D.I. 31.

[17] D.I. 34.

[18] D.I. 35.  I issued the draft report under seal, asking the parties to comment on whether any matter in this Report should be redacted. D.I. 36.  Having received no indication from the parties that the Report should remain under seal, I unsealed the draft report on July 7, 2022, and file this Report publicly. *See* D.I. 38.

[19] D.I. 37.

[20] D.I. 1, ¶ 30.

courts adhere to the *Restatement (Second) of Conflicts of Laws*.[21] "The administration of a trust ... is usually supervised ... by the courts of the state in which the trust is to be administered."[22] A trust instrument "is construed in accordance with the rules of construction of the state designated for this purpose in the instrument."[23] And, "[a] settlor may designate, either expressly or implicitly within the trust instrument, the law governing the trust's administration."[24] Further, the instrument "may expressly [or implicitly] authorize a change in the law governing administration of the trust."[25] A trustee of an *inter vivos* trust can perform his duties "without authority from any court … [and it is only] when a beneficiary or trustee brings a suit over the trust does a court acquire jurisdiction."[26]

---

[21] *In re Peierls Fam. Testamentary Trs.*, 77 A.3d 223, 227 (Del. 2013). Delaware has a statutory choice of law provision. *See* 12 *Del. C.* § 3332(b); *In re Peierls Inter Vivos Trs.*, 77 A.3d 249, 256 (Del. 2013). That provision may be modified by the terms of a trust instrument. *See* 12 *Del. C.* § 3332(b). Because the Trust contains a choice of law provision, Delaware courts follow the *Restatement (Second) of Conflicts of Laws* [hereinafter "Restatement"] in resolving the issues under the Trust's choice of law provision. *In re Peierls Inter Vivos Trs.*, 77 A.3d at 256.

[22] Restatement § 267 (1971). "[A]ll matters 'which relate to the management of the trust' are considered administrative matters." *In re Peierls Fam. Testamentary Trs.*, 77 A.3d at 227 (quoting Restatement § 271 cmt. a).

[23] Restatement § 268(a).

[24] *In re Peierls Fam. Inter Vivos Trs.*, 77 A.3d at 257 (citing Restatement § 272 cmt. c).

[25] *Id.*, at 259.

[26] *Id.* at 257-58 (citing Restatement§ 272 cmt. e) (internal quotation marks omitted).

Here, the Trust states that the Trust was created in California under the laws of California and that California law determines all questions "pertaining to the validity, interpretation and administration of [the Trust]."[27] It provides, however, that, upon the death of the first trustor,[28] the governing law shifts to Delaware law if the Trust's corporate trustee is incorporated in, organized under the laws of, or has its principal place of business, in Delaware.[29] The Trust appoints Corporate Trustee as co-trustee with Trustee if David T. Traitel died first.[30] Because Corporate Trustee is incorporated in, organized under the laws of, or has its principal place of business in Delaware,[31] the Trust provides for a change in the governing laws to Delaware upon the first settlor's death, so Delaware law governs the Trust. With the filing of this lawsuit, this Court may exercise jurisdiction over the Trust.[32]

---

[27] D.I. 1, Ex. A, art. 11.1.

[28] *See id.*, Ex. A, art. 2 (defining the term "Deceased Trustor").

[29] *Id.*, Ex. A, art. 11.1.

[30] *See supra* note 5.

[31] D.I. 1, ¶ 10.

[32] Although the Trust authorizes a trustee to administer the Trust outside of California or Delaware, there is no evidence that a trustee has done so. *Id.*, Ex. A, art. 11.1. Further, no evidence in the record suggests that any other court has taken jurisdiction over the Trust. *Cf. In re Peierls Fam. Inter Vivos Trs.*, 77 A.3d 249, 269-70 (Del. 2013). Also, although this matter was not brought to the Court's attention by Corporate Trustee or other party, the Trust contains a binding arbitration clause stating that "[i]n order to save the cost of court proceedings and promote the prompt and final resolution of any dispute regarding the interpretation [or administration of the Trust], any such dispute shall be settled by arbitration." D.I. 1, Ex. A, art. 11.2. Given the unique situation caused by the absence of

7

## B. A Person's Incompetency can be Determined under the Trust by a Certificate Diagnosing Incompetency from a Person's Regular Physician

The Petition seeks instructions as to whether the Provision requires only a certificate diagnosing incompetency from the Trustee's "regular" physician or for her to be determined "incompetent" under the process provided in the first sentence of the Provision.[33] The Corporate Trustee argues that, while the Provision is "arguably ambiguous and admittedly confusingly worded," it only requires a certificate from the Trustee's "regular" physician diagnosing incompetency in order for the Trustee to be determined "incompetent" under the Trust's terms.[34]

The Guardian ad litem posits that the Provision is not ambiguous regarding the use of a regular physician to determine incompetency.[35] He contends that "[o]nly if a person does not have a regular physician does the [Provision] require a procedure for appointing three neuropsychologists to determine incompetency."[36] To give effect to the second sentence of the Provision referencing a "regular" physician, the Provision should be interpreted as allowing another means to

---

any dispute concerning this matter between the parties (all beneficiaries consented to the relief requested in the Petition), I decline to address the arbitration clause related to this litigation but limit this holding to this litigation only.

[33] D.I. 1, ¶ 8.

[34] *Id.*, ¶ 6.

[35] D.I. 27, at 9.

[36] *Id.*

determine incompetency.[37]    The Guardian ad litem acknowledges that "[b]etter drafting would have put the sentence regarding use of a regular physician as part of the first sentence ..., but to give effect to the [second] sentence, it cannot be construed other than as an additional means of making the determination."[38]

"Just as a court interpreting a contract strives to effectuate the parties' intent, a court interpreting a trust agreement strives to effectuate the settlor's intent."[39] "In Delaware, the settlor's intent controls [trust interpretation]."[40]  "This prevents the settlor's beneficiaries from rewriting the terms of the settlor's trust, in derogation of his [or her] wishes, after his [or her] death."[41]  Following rules of contract interpretation, I "construe the [trust instrument] as a whole, giving effect to all provisions therein."[42]

The Provision contains six sentences.  The first sentence sets out three processes for determining incompetency under the Trust ("First Sentence").  Those

---

[37] *Id.*, at 10.

[38] *Id.*, at 11 n. 8.  The Guardian ad litem relied on guidance from Trustee's medical providers to conclude that requiring Trustee to be diagnosed by three neuropsychologists unfamiliar to her would be detrimental to her and not in her best interests. *Id.*, at 19-20.

[39] *Wilm. Tr. Co. v. Mills*, 2021 WL 2620585, at *8 (Del. Ch. June 25, 2021) (citing *In re Peierls Fam. Inter Vivos Trusts*, 77 A.3d 249, 263 (Del. 2013)).

[40] *In re Tr. Under Will of Flint for the Benefit of Shadek*, 118 A.3d 182, 194 (Del. Ch. 2015) (citations omitted). *See also In re The David H. Elliott Revocable Tr.*, 2015 WL 13884639, at *2 (Del. Ch. Aug. 6, 2015).

[41] *In re The David H. Elliott Revocable Tr.*, 2015 WL 13884639, at *2 (citation omitted).

processes include: (1) determination of incompetency by a court, (2) appointment of a conservator, or (3) determination by three neuropsychologists.[43] The second sentence ("Second Sentence") states: "If the individual whose competency is at issue does not have a 'regular' physician, then certificates of three licensed physicians selected as set forth in the preceding sentence shall be required."[44] The third sentence ("Third Sentence") gives a standard for a physician to use to determine incompetency.[45] The fourth sentence ("Fourth Sentence") addresses the timing of an incompetency determination.[46] The fifth sentence ("Fifth Sentence") requires that independent legal counsel be hired to represent either Trustor's (including Trustee's) interest in connection with an incompetency determination.[47] The sixth sentence ("Sixth Sentence") provides that the legal counsel will be designated by either Trustor's agent appointed by their advance health care directive.[48] The Court is not being asked to provide instruction as to the Third, Fourth, Fifth, and Six Sentences.

---

[42] *Riverbed Cmty., LLC v. Green Stone Eng'g, LLC*, 55 A.3d 330, 334 (Del. 2012) (cleaned up).

[43] D.I. 1, Ex. A, art. 6.19.

[44] *Id.*

[45] *Id.*

[46] *Id.*

[47] *Id.*

[48] *Id.*

The issue presented in the Petition is whether the First Sentence requires that one of three processes listed, including that three neuropsychologists execute a certificate diagnosing a person incompetent under the Trust, be followed or if the Second Sentence, by implication, allows an alternative process – that the person's "regular" physician provide a certificate of incompetency. And, if Trustee is determined to be incompetent under the Trust, the Trust provision that allows Corporate Trustee to serve as the only trustee of the Trust would be implicated.[49]

Although the First Sentence purports to list possible processes for determining whether a person, such as Trustee, is incompetent for purposes of the Trust, it contains no language that would make those three methods exclusive. The Second Sentence states that the certificates of three physicians are required if the person does not have a "regular" physician. It implies, but does not explicitly state, that the certificate diagnosing incompetency by a person's regular physician is sufficient to determine incompetency under the Trust. The Fourth Sentence states, in pertinent part, that the effective date of the incompetency determination is "the date of the physician's certificate(s), as the case may be."[50] This reference to a possible singular certificate supports the interpretation that one physician's certificate may be sufficient for determining incompetency. Reading these

---

[49] D.I. 1, Ex. B, art. 4 (art. 7.3(a)) ("If [Trustee] is unable (by death or incompetence) or otherwise unwilling to act, [Corporate Trustee] shall act as the successor Trustee ...").

11

provisions together, I conclude that the Trustors intended that the execution of a certificate diagnosing incompetency by a person's regular physician is sufficient to determine incompetency under the Trust. There is an intuitive logic to this reading since a regular physician would have intimate knowledge of the person's condition and be readily capable of making such a determination. And, if I read the Provision as requiring certificates from three physicians under the First Sentence, the Second Sentence would be rendered superfluous. Therefore, I conclude that, to give effect to the entire Provision, the certificate of a "regular" physician will suffice under the Provision to determine a person, such as Trustee, incompetent, so long as all requirements in the Provision are met.[51]

## C. Attorneys' Fees

Corporate Trustee seeks the payment of reasonable attorneys' fees, costs and expenses for this litigation from the Trust.[52] In trust litigation, the Court has the discretion, "as justice and equity may require," to award reasonable attorneys' fees to any party, to be paid by another party or from the trust at issue.[53] The general

---

[50] *Id.*

[51] This includes complying with the Third Sentence's standard for diagnosing incompetency by the physician and the requirements in the Fifth Sentence and Sixth Sentence that legal counsel designated by Trustee's agent, in this instance, appointed in her advance health care directive be appointed to represent Trustee's interests in connection with the incompetency determination. *Id.*, Ex. A, art. 6.19.

[52] *Id.*, at 9.

[53] 12 *Del. C.* § 3584.

rule is that a trustee is entitled to reasonable attorneys' fees when defending a trust and his own actions as a trustee.[54] Exceptions to that rule focus on whether the trustee acted in bad faith or fraudulently, and depend upon the extent of the trustee's wrongful conduct, and whether his actions benefitted the trust.[55] To my knowledge, the Trust does not address the payment of attorneys' fees in this circumstances.[56] There is no evidence that Corporate Trustee's actions, in pursuing this litigation, did not benefit the Trust, and I recommend the Court conclude that reasonable attorneys' fees, costs and litigation expenses incurred by Corporate Trustee related to this litigation are entitled to be paid from the Trust.[57]

## III. CONCLUSION

For the reasons set forth above, I recommend that the Court grant the petition for instructions and interpret that it is sufficient for determining incompetency under the Trust for a person's regular physician to execute a certificate diagnosing that person's incompetency and that this Court accept jurisdiction over the Trust. I also recommend that the Court award reasonable attorneys' fees, costs and expenses associated with this litigation be paid from

---

[54] *E.g., In re Unfunded Ins. Tr. Agreement of Capaldi*, 870 A.2d 493, 496 (Del. 2005); *McNeil v. McNeil*, 798 A.2d 503, 515 (Del. 2002).

[55] *McNeil*, 798 A.2d at 514-15.

[56] *See* D.I. 1, Ex. A.

[57] Following my Draft Report, counsel for the Corporate Trustee filed a fee affidavit. *See* D.I. 37. I will address the remaining fee issues in a separate order.

Trust funds. This is a final report and exceptions to this Report may be taken under Court of Chancery Rule 144.

Sincerely,

*/s/ Patricia W. Griffin*
Master in Chancery