**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

JALEEL WRIGHT,  :
                                :
               Plaintiff,  :     C.A. No.: K23C-10-004 JJC
                                :
      v.  :
                                :
DAVANTE J. FERNANDEZ,  :
                                :
              Defendant.  :

Submitted: October 23, 2025
Decided: November 25, 2025

**<u>MEMORANDUM OPINION & ORDER</u>**

Gary E. Junge, Esquire, Schmittinger & Rodriguez, P.A., Dover, Delaware, *Attorney for Plaintiff*.

Brian T. McNelis, Esquire, Young & McNelis, Dover, Delaware, *Attorney for Defendant*.

**CLARK, R.J.**

Plaintiff Jaleel Wright sues Defendant Davante Fernandez for bodily injuries following a car accident. At the time of the accident, Mr. Fernandez drove a car owned by his friend, Tymir Cowans, with Mr. Wright as his passenger. Mr. Wright allegedly suffered injuries caused by the collision.

Mr. Cowans had a $25,000 Allstate Property and Casualty Company (hereinafter, "Allstate") bodily injury policy in effect which provided coverage for the accident. Allstate tendered and paid those limits to Mr. Wright in exchange for Mr. Wright's execution of a "Release of all Claims" (hereinafter, the "Release").

Mr. Wright then sued Mr. Fernandez seeking additional compensation, and Mr. Fernandez now moves for summary judgment contending that the Release extinguished Mr. Wright's claim against him. As explained below, the Release unambiguously preserved Mr. Wright's claims against Mr. Fernandez. As a result, the motion for summary judgment must be denied.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The facts recited herein derive from the summary judgment record and are viewed in the light most favorable to Mr. Wright. Many of the extrinsic facts and circumstances that Mr. Wright offers to explain the parties' intent follow. They are included both for context and because Mr. Wright argues, in part, that there is an ambiguity in the Release. In the end, however, parol evidence offered to demonstrate the parties' intent will not be relevant because the four corners of the Release will control.

Mr. Fernandez drove his passenger, Mr. Wright, in a car owned by Mr. Cowans on October 9, 2021. Allstate insured the vehicle. During that trip, Mr. Fernandez negligently caused a collision. That collision, in turn, allegedly caused Mr. Wright bodily injury.

Thereafter, Allstate tendered its $25,000 in bodily injury policy limits to Mr. Wright who accepted the money in exchange for the executed Release. Then, shortly

2

thereafter, Mr. Wright sued Mr. Fernandez for additional compensation for his injuries.

When Mr. Fernandez answered, he pled the affirmative defense of accord and satisfaction, which the Court construes to be the affirmative defense of release.[1] Mr. Fernandez quoted the following portion of the Release in his answer:

> I do hereby release and forever discharge Tymir Cowans, Allstate Property and Casualty Insurance Company, and any other person, firm or corporation charged or chargeable with responsibility or liability, their heirs, representatives and assigns, from any and all claims, demands, damages, costs, expenses, loss of services, actions and causes of action, arising from any act or occurrence up to the present time and particularly on account of all personal injury, disability, property damage, loss or damages of any kind already sustained or that I may hereafter sustain in consequence of an accident that occurred on or about the 9th day of October, 2021, at or near Ricky Blvd., Bear, DE.[2]

Based on this language, Mr. Fernandez moved for judgment on the pleadings or, in the alternative, for summary judgment.[3] In his motion, he attached the Release in its complete form.[4] Mr. Wright opposed the motion.[5] He, in turn, attached an affidavit to his response reciting his intent to release only Mr. Cowans and Allstate—not Mr. Fernandez—when he signed the Release.[6]

At a higher level, both parties presented extrinsic materials in support of what was still a motion for judgment on the pleadings. As a result, the Court converted the motion to one for summary judgment. It then provided them thirty days to supplement the record.

---

[1] At oral argument, Mr. Fernandez modified the basis for his motion and clarified that he was pursuing the affirmative defense of release rather than accord and satisfaction. The analysis to follow addresses the defense of release, which Mr. Fernandez fairly raised in his answer by quoting a portion of the Release.

[2] D.I. 18 at 2 ¶ 13.

[3] D.I. 26.

[4] *Id.*, Ex. 1.

[5] D.I. 28.

[6] *Id.*, Ex. A at ¶ 7.

The Release, now in complete form, is part of the summary judgment record.[7] It includes the following language typed at the bottom:

> Jaleel Wright hereby specifically reserves any and all underinsured claims. No one is released and no admissions are made to the extent that it would adversely affect or bar Jaleel Wright from recovering any underinsured motorist benefits.[8]

Mr. Wright further supplemented the record with an email exchange between his attorneys' office and Allstate, which he offers to support his contention that he preserved his claims against Mr. Fernandez.[9] The email provides the following representation from an Allstate adjuster to Mr. Wright's attorney:

> So it seems that our policy has tendered $25k limits, they [State Farm] have $30k, and then the Allstate UIM policy has another $25k for UIM. On my end, I have enough information in my file to be able to offer our $25k limits for UIM knowing that SF only has $30k. Keep me posted on status of this one and when we can get it settled.[10]

This email demonstrates extrinsically that the parties knew that Mr. Fernandez, the "at fault driver," had $30,000 in available State Farm bodily injury limits at the time Mr. Wright signed the Release. It also confirms that neither party intended that Mr. Fernandez be released. In fact, the email demonstrates Allstate's intent to offer an additional $25,000 in UIM coverage contingent upon State Farm first exhausting its $30,000 available limits on behalf of Mr. Fernandez.[11]

Finally, Mr. Wright's affidavit, which is now part of the summary judgment record as well, alleges Mr. Wright's understanding and intent that the Release would

---

[7] The entire release could have been considered integral to the complaint in this case. As explained below, the language of the release unambiguously resolves the dispute. Nevertheless, in light of other extrinsic evidence offered by the parties, and the need to consider some additionally proffered evidence other than evidence focused on the parties' intent, the Court elected to resolve the dispute under Superior Court Civil Rule 56.

[8] D.I. 26, Ex. 1.

[9] D.I. 32, Ex. B.

[10] *Id.*

[11] *Id.*

4

not impair his claims against Mr. Fernandez.[12]  Mr. Wright also attests that he  filed his complaint against Mr. Fernandez only four days after he signed the Release.[13]

## II.     ARGUMENTS OF THE PARTIES

Mr. Fernandez contends that the Release bars Mr. Wright's recovery against him.[14]  To that end, Mr. Fernandez focuses on the language included in the first portion of the document.  He emphasizes its very broad recitation that Mr. Wright intended to release any other person who may be liable for injuries caused by the accident – not just Mr. Cowans and Allstate.

Mr. Wright counters with two arguments that he presents out of order. First, his primary argument is that the Release is ambiguous.  For that contention, he relies on isolated Delaware case authority either assuming or finding similar releases to be ambiguous.   Given an alleged ambiguity, he contends that extrinsic evidence becomes relevant when determining the parties' intent.  He then emphasizes the evidence discussed above that supports an inference that both parties involved in the initial settlement—Allstate and Mr. Wright— intended to preserve Mr. Wright's claims against Mr. Fernandez.

Second, and alternatively, Mr. Wright focuses on what should be the threshold step when construing a contract – examining what is contained within the four corners of the document.  When doing so, he emphasizes the following: (1) the Release expressly preserves a UIM claim; (2) the Release expressly preserves claims against any party whose release would impair Mr. Wright's UIM claim; and (3) Delaware law requires that all insurance proceeds payable for the benefit of Mr. Fernandez first be exhausted to perfect a UIM claim.  Mr. Wright thereby contends

---

[12] D.I. 28, Ex. A at ¶ 7.
[13] *Id.* at ¶ 9.
[14] D.I. 31.

5

that the Release unambiguously preserves his claims against Mr. Fernandez because it protects his right to pursue a UIM claim.[15]

## III. STANDARD

Mr. Fernandez initially sought judgment on the pleadings under Superior Court Civil Rule 12(c). Both parties offered additional matters outside the pleadings, however. The Court elected not to exclude them; rather, it converted the motion to one for summary judgment and provided the parties the opportunity to supplement the record.

As to the standard for summary judgment, the Court must determine whether there are issues of material fact and whether the moving party is entitled to judgment as a matter of law.[16] The moving party bears the initial burden of demonstrating the absence of any material dispute of fact.[17] If the moving party meets that burden, the non-moving party must demonstrate the existence of one or more material facts in dispute[18] Throughout, the Court draws all reasonable inferences in favor of the non-moving party.[19]

## IV. ANALYSIS

Mr. Fernandez contends that the Release was a general release intended to extinguish all claims, against all parties, that arise out of the accident. In response, Mr. Wright first argues that the Release is ambiguous. Alternatively, he contends that the Release expressly preserved his claim against Mr. Fernandez – which would naturally include the contrary, no ambiguity. For the reasons to follow, the Release is not ambiguous. As a result, the Court need not consider extrinsic evidence in the

---

[15] D.I. 32.
[16] Super. Ct. Civ. R. 56(c).
[17] *Brown v. Ocean Drilling & Expl. Co.*, 403 A.2d 1114, 1115 (Del. 1979).
[18] *Brzoska v. Olson*, 668 A.2d 1355, 1364 (Del. 1995).
[19] *Mechell v. Palmer*, 343 A.2d 620, 621 (Del. 1975).

record that bears on the parties' intent.  The language within the four corners of the Release will control.

Delaware law recognizes general releases and enforce them when their wording is clear. [20]  They are "intended to cover everything . . . what the parties presently have in mind, as well as what they do not have in mind."[21] They even extinguish claims against potential defendants who were not parties to the release agreement.[22]  In that way, general releases allow for a "complete peace" that fully resolves the parties' disagreement and all future third-party exposure.[23]

Releases, when supported by consideration, are interpreted as contracts.[24] When the Court interprets a release, it must consider the document "as a whole and . . . give each provision and term effect, so as not to render any part of the contract mere surplusage."[25]  When doing so, the Court limits its review to the four corners of the release unless there is ambiguity.[26]  When there is no ambiguity a release will only be set aside for fraud, duress, coercion, or mutual mistake.[27]

On the other hand, if the language is ambiguous, the release should be interpreted against the party who drafted it,[28] and the Court may consider extrinsic evidence to garner the parties' intent.[29]  Ambiguity exists, however, only when the

---

[20] *See, e.g.*, *Riverbend Cmty., LLC v. Green Stone Eng'g, LLC*, 55 A.3d 330, 337 (Del. 2012); *Deuley v. DynCorp Int'l, Inc.*, 8 A.3d 1156, 1164 (Del. 2010); *Hob Tea Room v. Miller*, 89 A.2d 851, 857 (Del. 1952); *see also Rochen v. Huang*, 1989 WL 5374, at *1 (Del. Super. Jan. 4, 1989) (collecting cases).
[21] *Corp. Prop. Assocs. 6 v. Hallwood Grp. Inc.*, 817 A.2d 777, 779 (Del. 2003).
[22] *See Chakov v. Outboard Marine Corp.*, 429 A.2d 984, 985 (Del. 1981) ("Moreover, we see no legal reason why an injured party cannot give a general release, including a release of third parties strangers to the contract, under [the right] circumstances . . ..").
[23] *See Seven Invs., LLC v. AD Cap., LLC*, 32 A.3d 391, 397 (Del. Ch. 2011).
[24] *Jhaveri v. K1 Inv. Mgmt. LLC*, 2025 WL 1779507, at *7 (Del. Ch. June 27, 2025).
[25] *Id.* (quoting *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010)).
[26] *Id.*
[27] *Id.* at *6.
[28] *Corp. Prop. Assocs. 6*, 817 A.2d at 779.
[29] *See Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997) ("But when there is uncertainty in the meaning and application of contract language, the

7

provisions of the release are "fairly susceptible of different interpretations."[30] Mere disagreement as to meaning, without more, does not create an ambiguity.[31]

Mr. Fernandez focuses on only the first provision of the Release in isolation— the portion that he quoted in his answer. Admittedly, that language, in isolation, would demonstrate a clear intent to release Mr. Fernandez because it would extinguish claims against any party for the October 9th accident. Mr. Wright counters headfirst by citing case decisions that have either assumed or found similarly broad language to be ambiguous. Those cases, however, either do not appropriately grapple with its clear terms, or are distinguishable.[32] Here, Mr. Wright's claims against Mr. Fernandez would be barred if the isolated portion of the Release Mr. Fernandez relies upon made up the entire release. The limited language relied upon does not, however.

All provisions of the Release must be given effect when possible, and, in this case, the full text of the document removes any ambiguity. Specifically, the Release, in full context, demonstrates the parties' intent to preserve claims against Mr. Fernandez. Namely, the final paragraph of the release provides that "*[n]otwithstanding any of the above, . . . [n]o one is released* and no admissions are

---

reviewing court must consider the [extrinsic] evidence offered in order to arrive at a proper interpretation of contractual terms.").

[30] *Jhaveri*, 2025 WL 1779507, at *7 (quoting *Eagle Indus., Inc.*, 702 A.2d at 1232).

[31] *Id.* (citing *Osborn*, 991 A.2d at 1160).

[32] Mr. Wright relies on two Delaware cases, *Chakov v. Outboard Marine Corp.*, 479 A.2d 984 (Del. 1981) and *Rochen v. Huang*, 1989 WL 5374 (Del. Super. Jan. 4, 1989), for the premise that language such as that contained in the first paragraph of the Release is, in its own right, ambiguous. Both cases are distinguishable. In *Chakov*, the Delaware Supreme Court merely "assumed" an ambiguity but nevertheless interpreted the release to be a general one and to release the third party. 479 A.2d at 985. In *Rochen*, the Delaware Superior Court declined to find an intent to release a third party under similar language. 1989 WL 5374, at *3. The *Rochen* decision is distinguishable, however, because the third-party defendant in that case allegedly committed *a future tort*—medical negligence—against the releasor. *Id.* In Mr. Wright's case, only one occurrence is involved, and that occurrence would fall within the clear language of the first portion of the Release but for the last paragraph that expressly preserves his claim.

8

made to the extent that it would adversely affect or bar Jaleel Wright from recovering any underinsured motorist benefits."[33]    In that way, the Release specifically preserves claims against a class of people – a class of people, who if released, would adversely affect Mr. Wright's ability to recover UIM benefits.

Delaware uninsured/underinsured law becomes central on this point.  Namely, a claimant may not recover UIM benefits until the "limits of liability under *all* bodily injury bonds and insurance policies available to the insured at the time of the accident have been exhausted by payment of settlement or judgments."[34] Accordingly, Mr. Wright must first exhaust Mr. Fernandez's separate bodily injury policy proceeds before he can recover UIM benefits.  That would be impossible if Mr. Wright released Mr. Fernandez.  For that reason, the provision in the Release that recognizes that "no one is released . . . to the extent that it would adversely affect . . . Mr. Wright from recovering any underinsured motorist benefits" unambiguously preserves Mr. Wright's claims against Mr. Fernandez.

In sum, the Release is not ambiguous, and the unambiguous document does not extinguish Mr. Wright's claims against Mr. Fernandez.  Rather, it expressly preserves all claims against Mr. Fernandez because the preservation of such claims will be necessary to perfect a claim for UIM benefits because Mr. Fernandez has separate coverage for the accident.[35]

---

[33] D.I. 26, Ex. 1 (emphasis added).

[34] 18 *Del. C.* § 3902(b)(3) (emphasis added); *see also Sivakoff v. Nationwide Mut. Ins. Co.*, 21 A.3d 597, 2011 WL 1877610, at *4 (Del. May 16, 2011) (TABLE) (holding that plaintiff failed to exhaust all available liability policies which meant the insurer was not required to pay underinsured benefits because the plaintiff executed a release of all tortfeasors in exchange for policy limits under the driver's father's insurance policy, *but* failed to recover from the driver's mother's insurance policy which also covered the tortfeasor); *Rostocki v. Geico Gen. Ins. Co.*, 2014 WL 6663078, at *1 (Del. Super. Nov. 17, 2014) (granting summary judgment for an insurer in a claim for underinsured benefits action where the plaintiff failed to exhaust *all* available liability polices).

[35] Even if there were an ambiguity regarding the parties' intent to release Mr. Fernandez, Mr. Wright stepped forward with sufficient extrinsic evidence to support the same finding on summary

9

## V. CONCLUSION

**WHEREFORE,** for the reasons above, Defendant Davante Fernandez's motion for summary judgment is **DENIED**.

**IT IS SO ORDERED.**

/s/ Jeffrey J Clark
Resident Judge

*Via File & ServeExpress*

---

judgment. Namely, he produced an affidavit stating that he interpreted the release to preserve his claim against Mr. Fernandez, *see* D.I. 28, Ex. A, and an e-mail from an Allstate claims agent that assumed that Mr. Fernandez's insurance company would provide up to $30,000 in coverage, *see* D.I. 32, Ex. B. Although it was unnecessary to consider this evidence, it would have confirmed the parties' intent to preserve Mr. Wright's claims against Mr. Fernandez. .